VISTA DEVELOPMENT JOINT VEN-
TURE II, Stephen B. Oveson and Lan-
del Investments, Appellants,

v.

PACIFIC MUTUAL LIFE INSURANCE
COMPANY and Paul Revere Life
Insurance Company, Appellees.

No. 01–90–00672–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 2, 1992.

Rehearing Denied Feb. 13, 1992.

Ginnings Birkelbach, El Paso, for appellants.

Travis R. Brewer, Larry R. Veselka, Houston, for appellees.

Before DUGGAN, MIRABAL and O'CONNOR, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a summary judgment holding the makers of a promissory note, following default and foreclosure, liable under the note's personal recourse provisions for property taxes due and unpaid before foreclosure. In three points of error, appellants, the note's makers, allege the trial court erred in granting summary judgment because: (1) the evidence established as a matter of law that their liability for payment of property taxes was extinguished by the foreclosure; (2) the evidence established that appellees, the note's payees and purchasers of the property at the non-judicial foreclosure sale, paid the property taxes as owners and not mortgagees; and (3) the note's makers created a material fact issue regarding their defense of estoppel. We affirm.

On December 1, 1981, appellee, Pacific Mutual Life Insurance Company (Pacific), loaned $2,650,000 to appellant, Vista Development Joint Venture II (Vista), to purchase commercial real estate near El Paso. The transaction was evidenced by a standard form commercial promissory note, secured by a deed of trust naming Pacific as beneficiary. Pacific subsequently assigned an interest in the note to Paul Revere Life Insurance Company (referred to collectively with its co-appellee as "Pacific"). Appellant Vista was a Texas joint venture comprised of one individual and Landel Investments, a Texas partnership of five individuals, including Stephen B. Oveson, a general partner (collectively, "Vista").

Terms of the note required payment of interest only for a period of five years, with final payment on December 1, 1986, of principal, all unpaid interest, and any other amount then outstanding and due to the lender. When Vista failed to make the final payment, Pacific gave the required notices and foreclosed its lien on March 3, 1987. The property was sold at a nonjudicial foreclosure sale to Pacific for $2,201,-206, leaving a deficiency of $544,417. Property taxes for 1985 and 1986 in the amount of $109,323.85 were due and owing on the property at the time of foreclosure;

Pacific paid the taxes on March 30, 1987. Pacific filed suit against Vista and the Landel partners in May 1987 to recover a personal deficiency equal to the amount of the property taxes, collection expenses, attorney's fees, and prejudgment interest, as provided for by terms of the note. On April 18, 1990, the trial court awarded Pacific judgment of those claims against Vista.

In its first point of error, Vista contends that the trial court erred as a matter of law in granting summary judgment on the issue of the property taxes because Vista's liability for payment had been extinguished through foreclosure. Vista asserts that, under the note's provisions concerning personal recourse items, Pacific's payment of property taxes became unrecoverable from Vista because that debt merged with the general indebtedness, which was not a personal recourse item.

The terms of the note generally provide for nonrecourse against the borrower for deficiencies on the principal amount; however, that provision is conditioned with exceptions that embody the specific intent of the parties:

ANY PROVISION contained in this Note, or in any of the Security Documents to the contrary notwithstanding, *it is agreed that in the event of any default* in the payment when due of any sums owing under this Note or under any of the terms of the Security Documents, or in the event of any default in the performance of any other provision or obligation of this Note, or of any of the Security Documents, *Payee or other holder* hereof *shall neither seek nor take any deficiency* or monetary *judgment against Maker* (or any venturer of Maker) or against any property of Maker (or any venturer of Maker) *other than the Mortgaged Property and the Payee* or other holder hereof *shall look solely to enforcement of the liens and security interests covering the Mortgaged Property* for the payment of this Note or any sums due under the Security Documents. The term "Mortgaged Property" as used herein shall have the same

meaning as attributed to such term in the Deed of Trust and Security Agreement described hereinbelow.

It is further understood and agreed, however, that nothing contained *in the preceding paragraph shall* in any manner or way release, *affect* or impair:

. . . .

(vii) *the right of Payee* or other holder of this Note *after* the occurrence of such *an Event of Default to recover from Maker the amounts required to satisfy any taxes or other "Impositions"* (as defined in the Deed of Trust and Security Agreement) *with respect to the Mortgaged Property which were due but not paid by Maker,* or as required by the terms of the Security Documents and for which sums were not deposited with the Payee or other holder hereof under the terms of the Security Documents. . . .

(Emphasis added.) Pacific's uncontroverted summary judgment evidence proved that Vista owned the property at the time it became encumbered with the tax lien, that the taxes were due and unpaid by Vista, and that the taxes were paid by Pacific shortly after its foreclosure purchase of the property.

█ It is evident from the terms of the note that the parties intended the note to be construed with the deed of trust, and the law provides accordingly. When a note and deed of trust are executed contemporaneously for the same purpose in the course of a transaction, they are to be considered as though they are in fact a single instrument. *Bennett v. State Nat'l Bank,* 623 S.W.2d 719, 721 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Because the two instruments are to be construed as one, we must interpret the resulting agreement with internal harmony to achieve the results that the parties intended. *Reilly v. Rangers Management, Inc.* 727 S.W.2d 527, 529 (Tex.1987). In so doing, we must give the language of the agreement its plain grammatical reading unless doing so would defeat the intention of the parties. *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex.1985); *Fox v. Thoreson,* 398 S.W.2d 88, 92 (Tex.1966).

█ The deed of trust definition of "indebtedness" includes all amounts due under the terms of the note and security agreement; however, the deed of trust more narrowly defines property taxes as an "imposition." Construing the instruments together, we conclude that the burden of unpaid property taxes is an imposition, includable in the total indebtedness, but recoverable by the note holders from the makers under the exception to personal nonrecourse quoted above. We also note that the deed of trust's general provision for personal nonrecourse is essentially identical to the provision in the note, with an exception that there will be no release of personal liability from:

(vii) the right of Payee or other holder of this Note after the occurrence of such an Event of Default and *during the pendency of such default* to recover from Maker the amounts required to satisfy any taxes or other "Impositions". . . .

(Emphasis added.) Both documents provide identical means for recovery of unpaid property taxes, except that under the deed of trust, if the trustee undertakes to act for the mortgagee's benefit, he must do so during the pendency of default, the period when the trustee was empowered, but not compelled, to act.

Vista bases its contention that liability for unpaid taxes is extinguished on deed of trust language that prescribes the order of application of foreclosure sale proceeds. Under that paragraph, proceeds are to be applied first to expenses, fees and costs of foreclosure, then to payment of impositions and other costs necessary to release liens against the property, except those extinguished by the sale. Uncontested summary judgment evidence established that Pacific satisfied those impositions and sought no recovery from Vista of any excess deficiency due other than the property taxes.

Vista correctly argues that sums paid to extinguish impositions became part of the total indebtedness, but follows that argument with a claim that the total indebtedness became a nonrecourse liability. Appellants cite the rule in *Smart v. Tower*

*Land & Inv. Co.,* 597 S.W.2d 333 (Tex. 1980), that no personal liability for unpaid taxes accrues to the mortgagor when the note and deed of trust provide that reimbursement for tax liability is secured and payable in like manner to the outstanding balance due under the indebtedness. *Id.* at 337.

We disagree with appellants. The *Smart* court restricted its ruling to occasions when "[t]here is no contractual authority created whereby [mortgagee] is also entitled to enforce his right to reimbursement as a personal debt." *Id.* at 337. Our note and deed of trust contain exceptions to the general release of the maker's liability for the indebtedness which clearly and specifically embody the parties' intent to provide contractual authority and provide the means by which Pacific could recover reimbursement for the property taxes.

Having given full effect to the intentions expressed by the parties when they made the contract, this Court detects no ambiguity in its construction. *Block 316 Garage, Ltd. v. Wortham & Van Liew,* 705 S.W.2d 249, 251 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). We hold that, as a matter of law, the trial court properly interpreted the note's terms to provide for recovery of a personal deficiency for unpaid taxes against Vista. Appellants' first point of error is overruled.

■ In their second point of error, the makers contend they are relieved of liability because Pacific made payment of the property taxes after foreclosure, when the mortgagor-mortgagee relationship had terminated and the deed of trust was no longer operative. As we noted before, the parties specifically intended to empower the trustee under the deed of trust to satisfy outstanding tax liens during the pendency of default and to recover afterward from the debtor; alternatively, the parties intended that the note provide personal recourse under its terms against the debtor for the benefit of the note holders, with no limitation to recovery other than that provided by statute.

■ Pacific discharged the outstanding tax lien and properly pursued recovery under the personal liability created by the note's contractual terms. Pacific was not required to assert rights under the deed of trust, but was free to select any remedy to which the parties had agreed. A secured party is never bound to a specific remedy against a defaulting debtor, but may select any action or combination of actions provided by agreement or law. *See Bennett,* 623 S.W.2d 719, 721.

■ By terms of the agreement, Pacific became equitably subrogated to the taxing authorities' liens when it paid the property taxes. Although the mortgagor-mortgagee relationship terminated upon foreclosure, payment of the outstanding taxes was made under terms of the *note,* which specifically granted rights of recovery to the obligee. The general rule, cited in the case of *Stone v. Tilley,* is that taxes paid by a mortgagee in protecting his security are uncollectible from the mortgagor when the sums become part of the total indebtedness, not subject to personal recourse against the debtor. 100 Tex. 487, 101 S.W. 201, 202 (1907). That rule is inapplicable in our case because it is restricted to cases in which debtors "were not liable for the debt secured by the mortgage." *Id.*

■ We adopt the modern doctrine, set forth in *Smart v. Tower Land & Inv. Co.:*

If taxes on the property owed by the mortgagor are delinquent, the purchaser, whether the mortgagee or a disinterested party, may desire to pay them to prevent foreclosure by the taxing authorities. Because of his interest in protecting his title, the purchaser is not a "mere volunteer," when he discharges an outstanding tax lien. *Under various circumstances he may be subrogated to the taxing authority's lien to the extent necessary for his own equitable protection.* When not compelled by the equities of the situation, full subrogation to all special privileges accompanying the taxing authority's constitutional and statutory lien will be denied.

597 S.W.2d 333, 338 (emphasis added). In the instant case, Pacific was not a "mere

volunteer" and subject to exclusion under the rule in *Smart*. Appellee was a mortgagee and note holder, and was conscientiously acting to preserve its title to the subject property. Pacific was not a stranger to the foreclosure transaction because it already had a $2,745,000 stake in the outcome of the sale. In this case, the mortgagee had little choice but to pay the taxes to preserve its position. Within the facts and circumstances of this case, we conclude this to be one the "various circumstances" when a party is fully entitled to equitable subrogation to the taxing authorities' liens, as well as to contractual recovery of reimbursement for payment of the property taxes, incident costs, interest, and fees. Appellants' second point of error is overruled.

In their final point of error, Vista contends that the affidavit of Stephen Oveson, attached to their response to Pacific's motion for summary judgment, created an unresolved fact issue with regard to Oveson's defense of estoppel. In his affidavit, Oveson alleged that, before foreclosure, a Pacific representative informed him that he had no liability in the foreclosure proceedings and no power to intercede in the foreclosure because he was not a guarantor on the note. He further alleged that, if he had any liability, it was Pacific's duty to inform him of that fact.

 The affirmative defense of estoppel includes the element of detrimental reliance. *See Finkelstein v. Southampton Civic Club*, 675 S.W.2d 271, 278–79 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Oveson's affidavit fails to establish any acts of detrimental reliance by him resulting directly from the conduct of Pacific or its agents.

Although Oveson properly raised the affirmative defense in response to Pacific's motion for summary judgment, he failed to provide summary judgment evidence sufficient to raise an issue of fact on each element of that affirmative defense. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979). To prevent rendition of summary judgment in favor of Pacific, Oveson was required to offer summary judgment proof of each element of the affirmative defense. *Kirby Exploration Co. v. Mitchell Energy Corp.*, 701 S.W.2d 922, 926 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Pacific conclusively established the absence of any disputed fact issues in its motion for summary judgment, and Oveson's mere pleading of an affirmative defense in a response will not suffice to prevent judgment. *Clark v. Dedina*, 658 S.W.2d 293, 296 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). Appellants' third point of error is overruled.

The judgment of the trial court is affirmed.