Lajarette BOOKER *v.* STATE of Arkansas

CR 98-505                                   984 S.W.2d 16

Supreme Court of Arkansas
Opinion delivered December 3, 1998

*John H. Bradley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Joseph V. Svoboda*, Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. Appellant, Lajarrette Booker, was convicted of the murder of Dorothy Byers, a school teacher at Blytheville West Junior High School. On May 20, 1996, after Ms. Byers failed to return to work following her lunch break and did not pick her son up from his after-school care, a co-worker went to Ms. Byers's home to investigate the situation. The co-worker found Ms. Byers stabbed to death in her home.

Having been convicted of two prior rapes, appellant received a sentence of life imprisonment without the possibility of parole pursuant to the habitual-offender statute, Ark. Code Ann. § 5-4-501 (Repl. 1997). Appellant raises three points on appeal. We affirm the trial court on all points.

## Sufficiency of the evidence

For his first point on appeal, appellant contends that the jury should not have been instructed on felony murder because the State did not present sufficient evidence to support that the murder occurred as a result of a burglary. Appellant was charged, in an amended information, with two alternative charges of murder. First, the State charged appellant with causing Ms. Byers's death while in the course of burglary or during the escape therefrom; second, the State charged appellant with purposely causing Ms. Byers's death. The trial court gave instructions on both offenses and the jury returned a general verdict of guilty. Appellant contends that it is impossible to know on which count he was convicted and, because there was not substantial evidence of a burglary the conviction should be reversed and dismissed. We note that the jury instructions provided for a general verdict, and that appellant did not seek instructions for a verdict on each of the specific charges and did not proffer instructions or make an objection to the case being submitted for a general verdict. Under these

circumstances, we will examine the evidence relating to both counts to determine whether there is sufficient evidence to support the jury's verdict on each of the charges. *See United States v. Nattier*, 127 F.3d 655 (8th Cir. 1997), *cert. denied*, 118 S.Ct. 1398, 140 L.Ed.2d 656 (1998). We note that pursuant to Ark. Code Ann. § 5-4-501, a conviction on either charge would support a life sentence.

■ ■ The test for determining sufficiency of the evidence is whether there is substantial evidence to support the verdict. On appeal, we will review the evidence in the light most favorable to the appellee and sustain the conviction if there is any substantial evidence to support the verdict. *Davis v. State*, 314 Ark. 257, 264, 863 S.W.2d 259, 262 (1993). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id*. Only evidence supporting the verdict will be considered. *Stewart v. State*, 332 Ark. 359, 363, 961 S.W.2d 750, 752 (1998).

It is important to note that we make no distinction between circumstantial and direct evidence when reviewing for sufficiency of the evidence. *Davis*, 314 Ark. at 264, 863 S.W.2d at 262. However, for circumstantial evidence to be sufficient, it must exclude every other reasonable hypothesis consistent with innocence. Whether the evidence excludes every hypothesis is left to the jury to determine. *Id*.

## A. Felony murder

The State presented sufficient evidence to the jury to support a conviction of felony murder. A person commits felony murder "if . . . he commits or attempts to commit a felony, and in the course of and in the furtherance of the felony or in immediate flight therefrom, he . . . causes the death of any person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-102(a)(1). The underlying felony charged in this case is burglary. "A person commits residential burglary if he enters or remains unlawfully in a residential occupiable structure of another person with the purpose of com-

mitting therein any offense punishable by imprisonment." Ark. Code Ann. § 5-39-201(a).

The State presented several witnesses whose testimony supported the jury's finding that a burglary occurred. The State first introduced the testimony of Shirley Bragg, who testified that on the day of the murder, while she was on her way to the grocery store, approximately thirty minutes before Ms. Byers would have been home for lunch, she witnessed a young man going up the stairs of Ms. Byers's home. Ms. Bragg further testified that later, on her way home from the store, she heard screams coming from Ms. Byers's home. Ms. Bragg was able to identify appellant in a photo line-up as the person she saw on Byers's steps the day of the murder.

The State also introduced the testimony of Police Detective David Flora, who testified that several of the security bars on Ms. Byers's home had been loosened. He further testified that the screen on the window was removed. Finally, following other testimony that the back hallway of Ms. Byers's home had been used as a storage area for months and that the back door could not be opened, Detective Flora testified that a new two-foot path had been cleared through the hallway on the day of the murder that could have allowed either an entrance or a possible exit for the burglar.

Jim Beck of the Arkansas Crime Laboratory also testified for the State. Mr. Beck, a fingerprint examiner, testified that appellant's fingerprints were found: (1) on the doorframe of Ms. Byers's back door, (2) on a knife that was found in the hallway near the back door, which was later determined to be one of the murder weapons, and (3) on a glass windowpane on the inside of the front door of Ms. Byers's home. We note that, under some circumstances, fingerprints may be sufficient to sustain a conviction. *Tucker v. State*, 50 Ark. App. 203, 206, 901 S.W.2d 865, 867 (1995).

The crime of burglary can be complete even though the intention to commit a crime after unlawfully entering the structure is not consummated. However, the facts must show circumstances of such probative force as to reasonably warrant the

inference of the purpose on the part of the accused to commit an offense punishable by imprisonment, other than the entry itself. *Washington v. State*, 268 Ark. 1117, 1121-1122, 599 S.W.2d 408, 410 (1980). Purpose can be established by circumstantial evidence, but that evidence must be such that the requisite purpose can be reasonably inferred, and the evidence must be consistent with the guilt of the accused and inconsistent with any other reasonable conclusion. *Id.* at 268 Ark. 1120, 599 S.W.2d 409.

The jury could have reasonably found that the purpose for appellant's entry or unlawful remaining in Ms. Byers's home was to commit rape. Gary Bias of the Blytheville Police Department testified that upon his investigation of the yard directly behind Ms. Byers's home he discovered a tee-shirt, later identified to be appellant's, which was stained with appellant's semen and Ms. Byers's blood.

█ Based on the testimony presented, a jury could have concluded beyond suspicion and conjecture that the elements of felony murder were established beyond a reasonable doubt by the State. Therefore, the trial court did not err in submitting the issue of felony murder to the jury.

### B.   First-degree murder

█ The State presented sufficient evidence to the jury to support a conviction of first-degree murder.

> "A person commits murder in the first degree if, with a purpose of causing the death of another person, he causes the death of another person." Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1993). "A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in the conduct of that nature or to cause such a result." Ark. Code Ann. § 5-2-202(1) (Repl. 1993). Intent is seldom capable of proof by direct evidence. Usually, it must be inferred from the circumstances of the killing. *Starling v. State*, 301 Ark. 603, 786 S.W.2d 114 (1990). The intent necessary for first degree murder may be inferred from the type of weapon used, from the manner of its use, and the nature, extent, and location of the wounds. *Williams v. State*, 304 Ark. 509, 804 S.W.2d 346 (1991). It is axiomatic

that one is presumed to intend the natural and probable conse-
quences of his actions. *Furr v. State,* 304 Ark. 41, 822 S.W.2d
308 (1991).

*Akbar v. State,* 315 Ark. 627, 629, 869 S.W.2d 706, 707 (1994).

██ In the case at hand, the jury could have inferred appel-
lant's intent to purposely kill Ms. Byers. The State introduced the
evidence of Dr. Steven Erickson who testified that Ms. Byers had
died as the result of ten stab wounds. He explained that Ms. Byers
had been stabbed in the head, chest and neck. Ms. Byers had been
stabbed by two different weapons: a kitchen knife and a pair of
scissors. Dr. Erickson also testified that Ms. Byers had "defensive
wounds" on her hands. Finally, Dr. Erickson was able to inform
the jury that the weapons found at the crime scene with appel-
lant's finger prints and Ms. Byers's blood on them could have been
used to cause the deadly wounds. Based upon this proof, there
was sufficient evidence for the jury to conclude beyond a reason-
able doubt that appellant stabbed Ms. Byers with the purpose of
killing her.

### Constitutionality of Ark. Code Ann. § 5-4-501(c)(d)

Appellant's second point on appeal is a challenge to the statu-
tory make-up of Ark. Code Ann. § 5-4-501(c)(1) and 5-4-
501(d)(1). He contends that these provisions are conflicting, mis-
leading, and vague, and therefore a violation of the Due Process
Clauses of the United States and Arkansas Constitutions. Addi-
tionally, he argues that the State did not notify him as to which
portion of the statute they intended to use in sentencing and
therefore his due process rights were violated. We have combined
these two arguments and will address them as such. The language
of Ark. Code Ann. § 5-4-501(c)(1) is as follows:

> (c)(1) A defendant who is convicted of a serious felony
> involving violence enumerated in subdivision (c)(2) of this sec-
> tion and who has previously been convicted of one (1) or more
> of the serious felonies involving violence enumerated in subdivi-
> sion (c)(2) of this section shall be sentenced to imprisonment, . . .

for a term of not less than forty (40) years nor more than eighty (80) years, or life.

(2) For the purposes of this subsection, a serious felony involving violence shall mean:

(A) Any of the following enumerated as follows:

(i) Murder in the first degree;

(ii) Murder in the second degree;

(iii) Kidnapping, involving activities making it a Class Y felony;

(iv) Aggravated robbery;

(v) Rape;

(vi) Terroristic acts, involving activities making it a Class Y felony; or

(vii) Causing a catastrophe. . . .

(Statutory references omitted.) The language of Ark. Code Ann. § 5-4-501(d)(1) states:

(d)(1) A defendant who is convicted of a felony involving violence enumerated in subdivision (d)(2) of this section and who has previously been convicted of two (2) or more of the felonies involving violence enumerated in (d)(2) of this section shall be sentenced to . . .

(A) For a conviction of a Class Y felony, a term of not less than life in prison. . . .

(2) For the purposes of this subsection, a felony involving violence shall mean:

(A) Any of the following felonies enumerated as follows:

(i) Murder in the first degree;

(ii) Murder in the second degree;

(iii) Kidnapping;

(iv) Aggravated robbery;

(v) Rape;

(vi)  Battery in the first degree;

(vii)  Terroristic act;

(viii)  Sexual abuse in the first degree;

(ix)  Violation of a minor in the first degree;

(x)  Domestic battering in the first degree;

(xi)  Unlawful discharge of a firearm from a vehicle; or

(xii)  Criminal use of prohibited weapons, involving activities making it a Class B felony.

(xiii)  A felony attempt, solicitation, or conspiracy to commit:

(*a*)  Capital murder;

(*b*)  Murder in the first degree;

(*c*)  Murder in the second degree;

(*d*)  Kidnapping;

(*e*)  Aggravated robbery;

(*f*)  Rape;

(*g*)  Battery in the first degree; or

(*h*)  Domestic battering in the first degree.

(Statutory references omitted.) Following these sections, which define the sentencing of a defendant as a habitual offender, we turn to subsection (g), which provides as follows:

> (g) Any defendant deemed eligible to be sentenced under provisions of both subsections (c) and (d) of this section shall be sentenced *only under subsection (d)* of this section.

Ark. Code Ann. § 5-4-501(g). (Emphasis added.)

■  In addressing the issue whether these statutes are unconstitutionally vague, we follow our rules of statutory interpretation. The first and most important rule of statutory interpretation is that a statute is presumed constitutional and all doubts are resolved in favor of constitutionality. The party challenging the statute has the burden. *McDougal v. State*, 324 Ark. 354, 359, 922 S.W.2d 323, 326 (1996). However, it must be remembered that

all other interpretative guides must give effect to the intent of the legislature. *Thomas v. State*, 315 Ark. 79, 80, 864 S.W.2d 835, 836 (1993).

The standard by which we determine when a statute is void for vagueness is whether it lacks ascertainable standards of guilt such that persons of average intelligence must necessarily guess at its meaning and differ as to its application. *Dougan v. State*, 322 Ark. 384, 388, 912 S.W.2d 400, 402 (1995). We are mindful of the fact that flexibility, rather than meticulous specificity or great exactitude, in a statute is permissible as long as its reach is clearly delineated in words of common understanding. *Dougan*, 322 Ark. at 388-389, 912 S.W.2d at 402. Finally, it is important to note that it is not necessary that all kinds of conduct falling within reach of the statute be particularized and the statute will not be struck down as vague only because there could be marginal cases where doubts might arise. *Dougan*, 322 Ark. at 389, 912 S.W.2d at 403.

The additional language and application of subsection (g) of the statute remedies any overlap in subsections (c) and (d) of Ark. Code Ann. § 5-4-501. Subsection (g) clearly orders that if a defendant is a habitual offender who is eligible to be sentenced under both subsection (c) and subsection (d) he will be sentenced according to the provision of subsection (d). This provision also gives the requisite notice to individuals that might be eligible for sentencing under either provision that they will be sentenced according to the guidelines set forth in subsection (d). Therefore, the statute is not vague and does not violate the Due Process Clauses of the United States and Arkansas Constitutions.

### Admission of Photos

For his final point on appeal, appellant contends that the trial court erred in admitting two photos of the victim. These photos were of the victim's body, at the crime scene, and depicted signs of *rigor mortis*. This court has stated that the admission and relevancy of photographs is a matter within the sound discretion of the trial court, and the mere fact that photos are

inflammatory will not render them inadmissible. *Goff v. State*, 329 Ark. 513, 521, 953 S.W.2d 38, 43 (1997). Even the most gruesome photos may be admissible if they tend to shed some light on any issue, corroborate testimony, are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand testimony. *Id.* Other acceptable purposes are to show the condition of the victims' bodies, the probable type or location of the injuries, and the position in which the bodies were discovered. *Goff*, 329 Ark. at 521-522, 953 S.W.2d at 43. Photos may also be admitted to show the nature, extent, and location of the trauma suffered by the victim. *Hill v. State*, 325 Ark. 419, 428, 931 S.W.2d 64, 68(1996).

The State argued at a pretrial hearing that the pictures were needed to prove that Mrs. Byers was murdered, to establish the circumstances surrounding the murder, to depict the nature of the murder, the viciousness of the attack, the extent of the struggle, and to show where the body was located. The State also noted that it was making an effort to ensure that the photos introduced fairly depicted the scene without unduly prejudicing the jury, and therefore was not introducing twenty-nine other more "gruesome and graphic" photos. Appellant argues that the pictures were not relevant, and served only to inflame the jury. The trial court found that the photos were "not unduly inflammatory." Because the photos could have been helpful to the jury by showing essential elements of the crime, the viciousness of the attack, the nature of the trauma suffered, and enabling the jury to understand testimony, the trial court did not abuse its discretion by allowing the two photos into evidence.

*4-3(h) Review*

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no error has been found.

Affirmed.