2009 Ark. 112

**Genre Jamison PAGE, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–322.**

Supreme Court of Arkansas.

March 5, 2009.

Cullen & Co., PLLC, Little Rock, by: Tim Cullen, for appellant.

Dustin McDaniel, Att'y Gen., by: Kent G. Holt, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

This appeal arises from the conviction of Appellant Genre (pronounced "John Ray") Jamison Page a/k/a "Money Ray" for capital murder and his sentence of life imprisonment without parole plus ten years, which includes an enhancement for use of a firearm. His sole point on appeal is that the circuit court erred in denying his motions for directed verdict. Because Appellant was sentenced to life imprisonment, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2008). We find no error and affirm.

A review of the record reveals the following. Bianca Lavonda, the victim's fiancée, testified that on February 21, 2007, she was with Stephanie Frazier, Appellant's girlfriend, when Stephanie and Appellant began arguing and Appellant began "roughhousing" Stephanie. Bianca testified that she knew Appellant as "Money Ray." According to Bianca, when she told

Appellant to stop fighting with Stephanie, Appellant came over and slapped Bianca twice. At that time, she and Stephanie got into Stephanie's car and drove to Bianca's house at 3317 West 10th Street. When they arrived at Bianca's house, Eli Payne, Gloria Tate (Bianca's mother), Bianca's little brother, and other friends were there. Bianca testified that Eli became upset when she told him what had happened with Appellant. Gloria, Bianca, and Eli drove to the store and saw Appellant while they were driving. Eli got out of the car and began arguing and fist fighting with Appellant.

Bianca testified that once Eli and Appellant separated, Eli, Bianca, and Gloria returned to Bianca's house. Bianca stated that Eli was standing by Bianca's car that was parked on the side of the street in front of the house while Bobby Ray Moore, a mechanic, was on the ground repairing the car. Bianca was walking up the stairs toward the front door of her house when she turned around and saw a four-door white box car with the back window busted out driving toward the car. When the car passed in front of Bianca's car, Bianca saw "Money Ray lift up the gun and shoot one time, just once." At trial, Bianca identified Appellant as "Money Ray" and the person she saw shoot the gun. She testified that Appellant was in the driver's seat of the car and shot through the passenger window. After the shooting, Bianca called Stephanie and asked her for Money Ray's real name. She stated that Stephanie gave her the name "John Ray Peterson." Bianca wrote this name down on a piece of paper and gave it to Gloria, who then gave it to police.

Gloria testified that on the day of Eli's murder, Stephanie and Bianca arrived at the house appearing upset and Stephanie looked like she had "been jumped on." Gloria then drove Eli to the store. When Eli saw Appellant, he jumped out of the car and began fighting with Appellant. After the fight, Eli got back into the car, and they returned to the house at 3317 West 10th Street to have a barbeque. Gloria testified that she was talking to Eli and then turned and began walking up the stairs to the house. She turned back around to ask Eli about the potato salad when she saw Appellant drive up and "pull a gun up towards the window and never rolled the window down." She described the car as "a square-like white car, like the old-fashioned cars, like my grandfather or my mother used to have." She also testified that the back window was busted out. Gloria testified that she yelled, "Jump, Eli. Run, Eli." According to Gloria, Eli did jump and tried to run, but was hit by the bullet in his side. Gloria testified that Appellant then "drove down the street so slowly like he hadn't done anything." Gloria stated that, at a later date, the police gave her a photo spread to look at and she identified Appellant as the person who shot Eli.

Bobby Ray Moore testified that he was at the house when the shooting occurred because he was doing mechanic work on a car outside of the house. He stated that he was lying on the ground on the passenger side of the car by the tires working on the front brakes. He said that he thought the owner of the car was named Isaiah or Isaac, but did not know his real name.[1]

Bobby testified that he saw a white car "coming kind of fast towards me," but that this did not bother him because he just wanted to finish his work and go home.

1. Bobby refers to Eli Payne as either "Isaiah," "Isaac," or "Eli" throughout his testimony.

He said the car was a white, four-door Oldsmobile with the back window knocked out. He stated that the car slowed down as it approached him. He testified that he noticed Eli standing on the sidewalk on the driver's side of his car. Bobby testified that the white car stopped, and he heard a shot. He then heard Eli say "Oh, I'm shot. I'm shot." Bobby testified that he could see the person in the car and he saw a black handgun. He also testified that he picked Appellant out of a photo spread provided to him by police.

Stephanie Frazier testified that, at the time of Eli's murder, she and Appellant were involved in a romantic relationship. On February 21, 2007, she and Bianca were driving down 12th Street when they saw Appellant on the corner of 12th Street and Booker Street. Stephanie stated that they stopped and Bianca got out of the car and started wrestling with Appellant. She testified that it was not violent, but rather "like a brother and sister thing." Stephanie stated that Bianca got back into the car and started yelling at Appellant. According to Stephanie, Bianca said, "I'm about to go get my boyfriend." She testified that Appellant put his hand in the car and slapped Bianca. Bianca then sped off with Stephanie still in the car. Stephanie testified that once they were back at Bianca's house, Bianca jumped out of the car and began yelling at Eli. Stephanie testified that she told Eli that she did not want him to get anything started with Appellant. Stephanie said that she left Bianca and Eli at the house and drove off. After the shooting, Bianca called her and asked for Appellant's name. Stephanie stated that she gave Bianca the name "Genre Peterson." Stephanie testified that she gave Bianca the last name "Peterson" because "I had known him for four or five years, and had sex with him on at least one occasion, probably more, but I didn't know his last name."

Officer Jeff King of the Little Rock Police Department testified that he took a criminal mischief report on February 21, 2007, at 3:03 p.m., the same day as Eli's shooting. King testified that the person who filed the report was Appellant Genre Page. Appellant told King that his child's mother threw a bottle and busted out the back window of his vehicle, which was a white, four-door 1984 Chevy Celebrity. The incident took place at the corner of 19th and Woodrow, approximately seven blocks south and one block east of 12th and Booker. The information that King obtained from Appellant included that he was born on May 3, 1981, and that his address was 3702 West 6th Street. Detective John White testified that at the time of Appellant's arrest for Eli's murder, Appellant's address was 3702 West 6th Street, and he gave police a date of birth of May 31, 1981.

On appeal, Appellant asserts that the circuit court erred in denying his motion for directed verdict because none of the physical evidence found at the scene links Appellant to the shooting and that the eyewitness testimony is inconsistent and does not support the conclusion that Appellant fired the shot that killed Eli. Appellant further contends that Bianca, Gloria, and Bobby's testimony that they each were able to see across the passenger side of the vehicle and positively identify the driver from their different vantage points is "inherently improbable and borders on physically impossible."

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *See Johnson v. State*, 375 Ark. 462, 291 S.W.3d 581 (2009). We will affirm the circuit court's denial of a motion for directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's

verdict. *See id.* This court has repeatedly defined substantial evidence as "evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture." *Id.* (quoting *Hoyle v. State,* 371 Ark. 495, 501, 268 S.W.3d 313, 318 (2007)). Furthermore, this court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *See id.*

Based on the testimony of the eyewitnesses, we hold that there is sufficient evidence to support the jury's verdict in this case. There were three eyewitnesses who testified, identifying Appellant as the person who fired the shot that killed Eli Payne. Each of the three eyewitnesses also testified to seeing a white, box-like car with the back window "busted" or "knocked" out being driven by Appellant. We have held that the testimony of one eyewitness alone is sufficient to sustain a conviction. *See Davenport v. State,* 373 Ark. 71, 281 S.W.3d 268 (2008). Furthermore, the jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* In the present case, we cannot say with assurance that the testimony of the witnesses identifying Appellant as the shooter was "inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon." *Id.* Viewing the evidence in the light most favorable to the State, we hold that there is substantial evidence to support Appellant's conviction. Accordingly, we affirm the circuit court's denial of Appellant's motion for directed verdict.

In compliance with Arkansas Supreme Court Rule 4–3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Appellant, and no prejudicial error has been found. *Boldin v. State,* 373 Ark. 295, 283 S.W.3d 565 (2008).

Affirmed.