2009 Ark. App. 504

**Deandrae LEWIS, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CACR 08–1343.**

Court of Appeals of Arkansas.

June 24, 2009.

Rice & Adams, by: Brian K. Woodruff, Jacksonville, for appellant.

Dustin McDaniel, Att'y Gen., by: Pamela A. Rumpz, Ass't Att'y Gen., for appellee.

M. MICHAEL KINARD, Judge.

Deandrae Lewis appeals from his convictions for aggravated residential burgla-ry, theft by receiving, and fleeing.[1] He was sentenced to twelve years' imprisonment for the aggravated residential burglary and fined $100 for each misdemeanor (theft by receiving and fleeing). On appeal, Lewis challenges the sufficiency of the evidence supporting his aggravated-residential-burglary and theft-by-receiving convictions. He also contends that the trial court erred in allowing the admission of hearsay evidence by witness Eli Wilbert. We affirm.

The events underlying appellant's convictions took place in Jacksonville on April 2, 2008, and the early morning hours of April 3, 2008. Police responded to a report of a home invasion and, a few blocks away, a report of suspicious activity outside a vacant house. Mark Smith's[2] residence on Ruth Ann Drive was broken into. Eli Wilbert, Smith's neighbor, testified that on the evening in question he was watching a movie with his wife when they heard a "loud boom" that "shook [their] whole apartment." The sound came from Mark Smith's house, and Wilbert testified that it sounded like it came from the back door. Wilbert stepped out his back door and looked around, and he could see that Smith's door was ajar. When he went back to the front door, he saw Smith and another man running down the street. Wilbert testified that Smith "appeared very distraught, upset, yelling. He was screaming 'help, help, help! Call the police! Call the police!'" Wilbert testified that four black males whom he had never seen before came out of the house. According to Wilbert, one of the men was carrying a shotgun. He was wearing a white "hoodie" with distinctive coloring on it. All four men ran and got into a gray

1. Appellant was convicted on a charge of theft by receiving of keys; he was acquitted on a separate charge of theft by receiving of a Chevrolet Malibu.

2. Smith was deceased by the time of trial.

four-door sedan, "like a Malibu." The car left at a very high rate of speed, and it struck the curb "very hard" during its second turn.

Wilbert testified that he had an opportunity to go to Smith's house after the incident. He described the house as "ransacked" and "really in disarray"; he described the back door as "severely kicked in and damaged." After giving his statement to the police, Wilbert was taken to Michelle Street, which was six or seven blocks away, where he identified a car as the one in which the men drove away. Wilbert testified that there was front left-side damage to the front tire, which was the same tire he had seen hit the curb. Wilbert also saw keys, which he recognized as Smith's, in the back seat of the car. Wilbert identified the two suspects in custody as being two of the individuals he saw coming out of Smith's house and a shotgun as being the one he saw back on Ruth Ann Drive.

Michelle Lofton, who lives at # 1 Michelle Lane in Jacksonville, testified that her husband called police late on the evening of April 2, 2008. She stated that she was watching television when she heard a noise that sounded like someone was having car trouble. The noise got louder and louder and then stopped. Lofton looked outside and saw movement around a vacant house across the street. She saw a car and two or three people moving around outside of the vehicle. She observed someone go through the side gate and into the backyard of the vacant house, at which point she decided to wake up her husband. Suspecting vandalism, they called the police.

Officer Melissa Williams of the Jacksonville Police Department responded to the call regarding the suspicious vehicle at # 4 Michelle Lane. She testified that she and Officer Robert Slash responded within minutes. As they were getting out of their police cars, they "heard a clink, like something hitting concrete." They saw a black male wearing a light-colored jacket or sweatshirt run from the driveway across the front of the house to the north end of the house. They heard a board break and saw him jump over the privacy fence. Neither officer attempted to pursue the man beyond the backyard. A suspect was soon apprehended, and Williams identified the suspect as appellant.

Upon searching the vehicle in the driveway, Williams found a set of keys with a pool ball key chain; the keys did not fit the ignition of the car. Outside the car was a ball cap, which Williams believed someone had taken off while trying to change the front tire. The front tire of the vehicle had been blown out, and there was a spare on that tire with the lug nuts not yet tightened. The original tire and hubcap were nearby, as was a single-barrel shotgun.

Detective Mark Humphries of the Jacksonville Police Department testified that he responded to # 4 Michelle Lane to process the vehicle for latent fingerprints, and to do tape lifts for DNA, hair samples, and/or blood that may have been left at the scene. The latent prints Humphries submitted did not contain sufficient ridge detail to be used for identification purposes.

Antonio Kenny testified that he was with appellant on the night in question. Kenny was arrested and charged with residential burglary and theft of property, but those charges were later dropped. At the time of trial, Kenny was on supervised probation in an unrelated case. Part of his plea deal was that he testify at appellant's trial. Kenny testified that on the night in question he, appellant, and another man went to Jacksonville in an Impala. Appellant and the other individual knocked on the door of a residence; when no one

answered, they went around to the back and entered. The two men who had been in the house tried to run out the front door, but were stopped. They were "arguing, fussing, and exchanging words" for no longer than five minutes. According to Kenny, it was appellant who had a shotgun. The two men who lived there ran out the front door, and he, appellant, and the other man drove away. They hit a curb and damaged the car, and they pulled into a driveway to fix it. The police pulled up, and Kenny ran. The police picked him up about an hour and a half later.

At the close of the State's case, appellant moved for a directed verdict on all charges. As to the aggravated residential burglary, defense counsel argued that no evidence was presented that (1) appellant did not have permission to be at Smith's residence or (2) appellant entered to commit a crime punishable by imprisonment. No argument was made regarding the misdemeanor theft-by-receiving charge. Appellant's motion was denied. Following the jury's verdicts, a judgment and commitment order was filed in this case on August 26, 2008. Appellant timely filed a notice of appeal.

▆▆ Appellant's first point on appeal is that the trial court erred in denying his motion for a directed verdict. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Page v. State,* 2009 Ark. 112, 313 S.W.3d 7. We will affirm the circuit court's denial of a motion for directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond speculation or conjecture. *See id.* Furthermore, the appellate court views the evidence in the light most favorable to the verdict, and

only evidence supporting the verdict will be considered. *See id.*

▆▆ A person commits aggravated residential burglary if (1) he commits residential burglary of a residential occupiable structure occupied by any person and (2) he is armed with a deadly weapon, represents by word or conduct that he is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. *See* Ark. Code Ann. § 5–39–204 (Supp.2007). A person commits residential burglary if he enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark.Code Ann. § 5–39–201(a)(1) (Repl.2006).

▆▆ Appellant argues that there was no evidence presented that he did not have permission to be at Mark Smith's residence at 1105 Ruth Ann. In his brief, appellant writes:

Witness Eli Wilbert testified that he saw Mark Smith outside his residence running down the street in a distraught and upset manner, but Witness Eli Wilbert had no personal knowledge of why Mark Smith was acting in this manner. Absent testimony from Mark Smith, it cannot be known whether Appellant was invited into the home, whether Appellant entered and remained unlawfully, why Mark Smith left the home in an upset and distraught manner, and whether his leaving had anything to do with Appellant.

We hold that the evidence in this case, albeit circumstantial, was sufficient to support the verdict. We make no distinction between circumstantial and direct evidence when reviewing for sufficiency of the evidence. *Booker v. State,* 335 Ark. 316, 320, 984 S.W.2d 16, 19 (1998). However, for

circumstantial evidence to be sufficient, it must exclude every other reasonable hypothesis consistent with innocence. *Id.* Whether the evidence excludes every other reasonable hypothesis is left to the jury to determine. *Id.* On appeal, we review the evidence in the light most favorable to the appellee. *Ross v. State,* 346 Ark. 225, 57 S.W.3d 152 (2001).

Here, the evidence was that appellant and another man broke down Smith's back door. They entered the residence and an argument ensued. Then, a "distraught" Smith ran from his home yelling that he needed help and asking someone to call the police. Appellant and those with him quickly left the scene carrying a shotgun. Thus, the evidence is more than sufficient to prove that appellant did not have permission to be in Smith's residence. Appellant's next subpoint, that there was no evidence that appellant had a shotgun upon entering Smith's home, is not preserved for appellate review because it was not argued before the trial court. *See* Ark. R.Crim. P. 33.1.

■ Appellant also argues that the evidence was insufficient to show that he committed theft by receiving of the car keys. The State contends that this argument is not preserved for appellate review because his motion to the trial court was made too late. Indeed, a review of the record reveals that appellant made a specific motion for directed verdict as to the theft-by-receiving charge involving the keys during discussion of jury instructions, after both sides had rested. This was too late. *See* Ark. R.Crim. P. 33.1; *State v. Holmes,* 347 Ark. 689, 66 S.W.3d 640 (2002) (recognizing that a sufficiency-of-the-evidence argument was not preserved by a motion for directed verdict made during closing argument).

If we were to reach the merits of this argument, we would still affirm. A person commits the offense of theft by receiving if he receives, retains, or disposes of stolen property of another person knowing the property was stolen or having good reason to believe the property was stolen. Ark. Code Ann. § 5–36–106(a) (Repl.2006). Here, appellant concedes the keys belonged to Mark Smith, but seems to argue that there was no evidence that the keys were stolen or that he was the one who stole them. We disagree. The unrebutted evidence showed the stolen keys were found in the car that appellant and his accomplices used for the burglary of Smith's residence. The possession of stolen property, if not satisfactorily explained to the jury, is sufficient to sustain a conviction for theft by receiving. *Wilson v. State,* 10 Ark.App. 176, 662 S.W.2d 204 (1983).

■ For his second point on appeal, appellant argues that the trial court erred in allowing the admission of hearsay evidence by witness Eli Wilbert. At trial, Wilbert testified that the men he observed coming out of Smith's home were "not supposed to be there," at which point defense counsel made a hearsay objection. The objection was overruled. Appellant contends that Wilbert's statement that appellant was not supposed to be at the home of Mark Smith was hearsay because it was not within Wilbert's personal knowledge.

■ The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Rodriguez v. State,* 372 Ark. 335, 276 S.W.3d 208 (2008) (citing *Morris v. State,* 358 Ark. 455, 193 S.W.3d 243 (2004); *Pugh v. State,* 351 Ark. 5, 89

S.W.3d 909 (2002)). Moreover, we will not reverse absent a showing of prejudice. *Id.*

Appellant's hearsay argument is misplaced. Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. *See* Ark. R. Evid. 801(c). The trial court did not abuse its discretion in overruling appellant's hearsay objection.

Affirmed.

VAUGHT, C.J., and BROWN, J., agree.