2012 Ark. App. 71

Gary BENTON, Appellant

v.

STATE of Arkansas, Appellee.

No. CA CR 11–404.

Court of Appeals of Arkansas.

Jan. 18, 2012.

Christopher A. Cordero, Benton, for appellant.

Dustin McDaniel, Atty. Gen., Lauren Elizabeth Heil, Little Rock, for appellee.

DOUG MARTIN, Judge.

An Arkansas County jury found appellant Gary Benton guilty of second-degree forgery and theft by receiving, and he was sentenced as a habitual offender to serve thirty years' imprisonment on each count, with those sentences running consecutively. Benton raises the following arguments on appeal: (1) there was insufficient corroboration through accomplice testimony to support his conviction for second-degree forgery, and (2) there was insufficient evidence to support his theft-by-receiving conviction. We affirm.

The State charged Benton with second-degree forgery with respect to a check in the amount of $150 belonging to Elear May Racy and with theft by receiving in

connection with a gold ring owned by Racy, valued in excess of $500 but less than $2,500, that was found in Benton's possession. Both charges were Class C felonies.[1] The State further charged Benton as a habitual offender, alleging that Benton had previously been convicted of four or more felonies.

At trial, Racy testified that David Hughes was her brother-in-law and that Benton was Hughes's brother. Racy recalled that, in June 2009, Hughes and Benton came to her home and helped her remove fallen tree limbs from her backyard. Racy testified that the two men came inside her house for a glass of water when they were finished with the task. They entered through the back door, which was only a few feet from Racy's bedroom, and the men exited Racy's house through the front door.

Racy further testified that, on December 11, 2009, her house was broken into while she was at a funeral in Little Rock. Before leaving for the funeral, Racy left some jewelry on top of her dresser after deciding not to wear the jewelry to the funeral. When Racy came home, she went into her bedroom and saw broken glass and two rocks beside her dresser. Racy also saw that the jewelry she had left on the dresser was missing. Racy called the police and reported that her jewelry had been stolen. Racy testified that she was not aware that anything else was missing from her home at that time. On December 15, 2009, however, Racy checked her bank account balance and realized that blank checks had also been stolen from her home. Racy specifically testified that she thought the checkbooks were in her home as recently as December 7, 2009.

According to Racy, a printout from her bank revealed that someone had written a check in the amount of $150 from her bank account. Racy stated that the signature on the check was not hers and that she did not authorize anyone to write a check from her bank account. Racy testified that she did not know Marsha Stigger, whose endorsement appeared on the back of the check.

Further, Racy testified that the police had recovered a gold ring belonging to her. Racy testified that she had acquired the ring in 1993 and paid $800 or $900 for it.

Marsha Stigger, a felon on parole and admitted crack-cocaine addict, testified that she was charged with forgery with respect to the $150 check because she had cashed the check at the A–Z Mart in Stuttgart on December 12, 2009. Stigger testified that she had known Benton for more than twenty years and that he had given her the check. According to Stigger, Benton owed her $50 for previously "turn[ing] a trick." Stigger testified that Benton approached her with the check, claiming that the check belonged to his girlfriend, and that she should cash it and take her $50 from the check. Stigger stated that the check was "all made out" and that the payee was A–Z Mart and the memorandum line indicated it was for "house clean." Stigger testified that Benton took her to the A–Z Mart, she endorsed the back of the check, and she cashed it and purchased cigarettes and beer. Stigger kept her $50 and gave the rest to Benton. Stigger testified, "Any suspicions I had about cashing the check, my addictions might have led me to go ahead and cash it anyway." According to Stigger, after she cashed the check, Benton asked her to cash another

---

1. Arkansas Code Annotated sections 5–37–201(e) (Supp.2009) and 5–36–106(e)(2) (Repl. 2006), respectively.

check approximately fifteen minutes later. Stigger testified that the second check reflected "the same name and stuff." Stigger refused to cash the second check.

Jason Sandine, a Stuttgart police officer, testified that he spoke with Racy following the initial report of stolen property. Specifically, Sandine stated that Racy came to him on December 15, 2009, to discuss a check cashed at the A–Z Mart for $150. Sandine testified that the police report was supplemented to include the missing checks discovered by Racy subsequent to the report of the missing jewelry. Sandine saw Stigger's name on the bank printout provided by Racy and asked Stigger about the check written for $150. Sandine testified that Stigger told him that Benton had given her the check and she had cashed it. Sandine ran a background check on Benton and discovered that his license was currently suspended and he had two outstanding warrants for his arrest. Sandine and another officer subsequently approached Benton at a car wash and arrested him. In a search incident to arrest, Sandine was pulling a napkin or paper towel from Benton's pocket when Benton blurted out that he had found "that" on the ground. Sandine was expecting to see drugs, but, instead, a gold ring fell onto the ground. Sandine recalled that some jewelry was missing from Racy's home, so he confirmed that the ring found in Benton's possession belonged to Racy. Sandine testified that he did not believe Benton's explanation as to how he came to have the ring in his possession.

Benton moved for directed verdicts with respect to both charges, and the trial court denied his motions. The jury then convicted Benton of second-degree forgery and theft by receiving.

Benton argues that the trial court erred in denying his motions for directed verdict. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Lewis v. State*, 2009 Ark. App. 504, 323 S.W.3d 640. We will affirm the trial court's denial of a motion for directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond speculation or conjecture. *Page v. State*, 2009 Ark. 112, 313 S.W.3d 7. Furthermore, the appellate court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

We make no distinction between circumstantial and direct evidence when reviewing for sufficiency of the evidence. *Booker v. State*, 335 Ark. 316, 984 S.W.2d 16 (1998). Circumstantial evidence may constitute substantial evidence to support a conviction. *Brunson v. State*, 368 Ark. 313, 245 S.W.3d 132 (2006). The longstanding rule is that, for circumstantial evidence to be sufficient, it must exclude every other reasonable hypothesis consistent with innocence. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). Whether the evidence excludes every other reasonable hypothesis is left to the jury to determine. *Id.*

Although it is his second argument on appeal, we will first address Benton's argument with respect to his conviction for theft by receiving, given that the dissenting judges agree with the majority that Benton's conviction for this offense can be affirmed. Benton argues that there was no evidence that he knew the gold ring belonging to Racy was stolen and that the jury was left to speculate as to how Benton came into possession of the ring.

According to Arkansas Code Annotated section 5–36–106(a) (Repl.2006), "[a]

person commits the offense of theft by receiving if he receives [or] retains ... stolen property of another person, knowing ... or having good reason to believe it was stolen." The unexplained possession or control of recently stolen property gives rise to a presumption that the person in possession or control of the property knows or believes the property was stolen. Ark.Code Ann. § 5–36–106(c)(1) (Repl. 2006). The presumption is not necessarily overcome when the possessor gives a plausible explanation for his possession. *See Core v. State*, 265 Ark. 409, 578 S.W.2d 581 (1979). Rather, the reasonableness of the accused's explanation, and thus whether the defense has been established, is for the trier of fact to determine. *Id.* The factfinder is not required to believe the defendant, as he is the person most interested in the outcome. *Ross v. State*, 300 Ark. 369, 779 S.W.2d 161 (1989).

Only three or four days had elapsed between the theft at Racy's home and Sandine's discovery of the stolen ring in Benton's possession. Benton's possession of recently stolen property gave rise to the presumption that Benton knew the ring was stolen. Although Benton offered an explanation for his possession, the jury was not required to believe Benton's explanation that he had found the ring on the ground. Accordingly, substantial evidence supports Benton's conviction for theft by receiving, and we affirm.

As to the forgery conviction, Benton argues that the fact that he was found with Racy's stolen ring is insufficient to prove that he had the requisite intent to commit second-degree forgery three days earlier. In his directed-verdict motion, however, Benton challenged only the sufficiency of the corroboration provided by Stigger. This court does not consider arguments raised for the first time on appeal. *Henson v. State*, 94 Ark.App. 163,

227 S.W.3d 450 (2006). Therefore, we do not address this particular argument.

Benton argued in his directed-verdict motion at trial and now argues on appeal that, without Stigger's testimony as an accomplice, there was insufficient evidence to convict him of second-degree forgery. We disagree.

"A person forges a written instrument if, with the purpose to defraud, he or she makes, completes, alters, counterfeits, possesses, or utters any written instrument that purports to be or is calculated to become or to represent if completed the act of a person who did not authorize the act." Ark.Code Ann. § 5–37–201(a) (Supp. 2009). "A person commits forgery in the second degree if he or she forges a ... check ... that does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status." Ark.Code Ann. § 5–37–201(c)(1) (Supp.2009).

Arkansas Code Annotated section 16–89–111(e)(1)(A) (Repl.2005) provides that a person cannot be convicted of a felony based upon the testimony of an accomplice, unless that testimony is "corroborated by other evidence tending to connect the defendant ... with the commission of the offense." Corroboration is not sufficient if it merely establishes that the offense was committed and the circumstances thereof. Ark.Code Ann. § 16–89–111(e)(1)(B). The test for determining the sufficiency of the corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). Circumstantial evidence may be used to support accomplice testimony, but it, too, must be substantial. *Id.* Corroborating evi-

dence need not, however, be so substantial in and of itself to sustain a conviction. *Id.*

■ There appears to be no dispute that Racy's testimony was sufficient to prove the check for $150 was forged. The dissenting judges would hold that, when Stigger's testimony is eliminated from consideration, the remaining evidence does not tend to connect Benton with |₈the commission of the crime. We do not agree. Viewing the evidence in the light most favorable to the verdict, the evidence established that Racy's ring and checkbooks were stolen at the same time. This, combined with the fact that Benton was found in possession of Racy's stolen ring, for which the jury found Benton offered no reasonable explanation, *tends to connect* Benton with the stolen check that was forged. Also, Benton had been inside Racy's home that summer. While this evidence is circumstantial given that it was Stigger, rather than Benton, who cashed the forged check, circumstantial evidence can provide the basis to support the conviction if it is consistent with Benton's guilt and inconsistent with any other reasonable conclusion, and such a determination is a question of fact for the jury. *See Ross, supra.* We hold that this evidence, while circumstantial, was substantial. Considering Stigger's accomplice testimony, along with the other evidence in this case, there was substantial evidence to support Benton's conviction for second-degree forgery. Accordingly, we affirm.

Affirmed.

PITTMAN, GRUBER, and GLOVER, JJ., agree.

VAUGHT, C.J., and HART, J., concur in part and dissent in part.

JOSEPHINE LINKER HART, Judge, concurring in part and dissenting in part.

I agree to affirm Benton's conviction for theft by receiving, albeit for a somewhat different reason. I cannot agree to affirm Benton's second-degree-forgery conviction because there was insufficient corroboration of Stigger's testimony.

First, with regard to the majority's disposition of Benton's theft-by-receiving conviction, *Core v. State,* 265 Ark. 409, 578 S.W.2d 581 (1979), does hold that a plausible |₉explanation alone does not, as a matter of law, necessarily overcome the recently-stolen unexplained-possession presumption. However, the *Core* court indicated that more was required of a reviewing court than the majority has undertaken. In affirming Core's conviction, it noted, "Here there were valid reasons for discounting the credibility of Core, as indicated by inconsistencies in his testimony, such as the price he paid for the items involved and the number of sellers from whom he purchased." *Core,* 265 Ark. at 413, 578 S.W.2d at 583. Similarly, there was also a substantial basis for discounting Benton's explanation because through the testimony of Sergeant Sandine, the State presented evidence that Benton "blurted out" that he found the ring on the ground before his ownership was even made an issue. As the majority noted, although the police believed that Benton was involved in Stigger's forgery, he was being arrested on outstanding warrants. It was this fact alone that made Benton's explanation implausible. Our supreme court has held that an implausible explanation of the circumstances surrounding an alleged involvement in a crime can constitute substantial evidence of guilt. *Barrett v. State,* 354 Ark. 187, 119 S.W.3d 485 (2003); *Stewart v. State,* 338 Ark. 608, 999 S.W.2d 684 (1999). Accordingly, I concur in affirming Benton's theft-by-receiving conviction.

I cannot, however, find sufficient evidence to affirm Benton's conviction for

forgery. A conviction in a felony case cannot be had on the testimony of an accomplice unless it is corroborated by other evidence tending to connect the defendant with the commission of the offense. Ark.Code Ann. § 16–89–111(e)(1)(A) (Repl.2005). Corroboration is insufficient if it merely shows that the offense was committed and the circumstances thereof. Ark.Code Ann. § 16–89–111(e)(1)(B). It is settled law that the corroborating evidence must be substantial; however, it need not be so substantial in and of itself to sustain a conviction. *Andrews v. State,* 344 Ark. 606, 42 S.W.3d 484 (2001). While the corroborating evidence may be circumstantial, it must nonetheless be substantial. *Green v. State,* 365 Ark. 478, 231 S.W.3d 638 (2006). Evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Id.* The test is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Martin v. State,* 346 Ark. 198, 57 S.W.3d 136 (2001).

Without Stigger's testimony, there is nothing to place Ms. Racy's check in Benton's possession. I am mindful that Benton was found in possession of one piece of jewelry taken during the December 11 burglary, but it is only speculation that the check in question was taken at that same time. Ms. Racy had not noticed that the check was stolen in her initial police report and only *assumed* that it was taken during the burglary. Unlike the jewelry that she positively noted was on her dresser on the day of the burglary, she was only able to recall seeing her checkbooks in her home several days before. Accordingly, she was *speculating* that the checks were taken during the burglary. Moreover, Benton's possession of the ring supported only a conviction of theft by receiving, not theft or burglary. Implicit in his possession of the ring was an acknowledgment by the State that there were other ways that Benton could have come into possession of the ring than being a participant in the December 11 burglary. It is noteworthy that in its closing argument to the jury, the State makes this very point. The prosecutor stated,

> I've not charged him with burglary. I've not charged him with theft of property, simply because of what Mr. Cordero says. We don't have anybody who can say, "I saw a 5′ 8″, 220 pound man leaving," or, "I saw Gary Benton leaving."

Generally, the appellate courts of this state have noted that evidence of the presence of an accused in proximity of a crime, opportunity to commit the offense, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. *Passley v. State,* 323 Ark. 301, 915 S.W.2d 248 (1996). The State failed to present this type of proof. Although Stigger claimed that Benton waited for her in his car while she cashed the check, the State produced no independent evidence—neither surveillance video nor eyewitness testimony—that placed Benton at the convenience store on the night in question. Likewise, the State produced no evidence placing Benton with Stigger at any other time. Further, the State did not introduce any type of physical evidence. There was no analysis of the handwriting on the check that Stigger claimed was "all made out" when she allegedly obtained the check from Benton. Moreover, no other checks were found on Benton or in his effects, despite Stigger's claim that Benton had another check that he asked her to cash. Accordingly, the jury would be left to speculate that the two crimes were related.

Benton's conviction for second-degree forgery should be reversed and dismissed.

VAUGHT, C.J., joins.