Kimberly Ann DOUGAN *v.* STATE of Arkansas

CR 95-491                                    912 S.W.2d 400

Supreme Court of Arkansas
Opinion delivered November 13, 1995
[Petition for rehearing denied December 18, 1995.]

*Ford & Wadley*, by: *Paul N. Ford*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., and *Robin Carroll*, Law Student Admitted to Practice Pursuant to Rule XV(E)(1)(b) of the Rules Governing Admission to the Bar, for appellee.

BRADLEY D. JESSON, Chief Justice. The appellant, Kimberly Ann Dougan, was convicted of abuse of a corpse, Ark. Code Ann. § 5-60-101 (Repl. 1993), sentenced to six years' imprisonment, and ordered to pay a $10,000.00 fine. She raises two arguments on appeal: (1) the trial court erred in denying her motion to dismiss on the basis that the statute is unconstitutionally vague; and (2) the trial court erred in denying her motion for directed verdict because there was insufficient evidence that she had "physically mistreated" a corpse. We affirm.

### Facts

On the morning February 16, 1994, the body of a baby boy was discovered in a dumpster on Highway 306 near Colt, Arkansas. Appellant Kimberly Ann Dougan and her husband Ronald Dougan owned a gray van matching the description of a vehicle that had been seen in the area early that morning. Chief Investigator Glen Ramsey of the St. Francis County Sheriff's

Office went to the Dougan residence on February 18, and spoke with Ronald, who indicated that his wife had taken the van to go to the doctor on the morning of February 16, and had returned at approximately 6:30 or 7:00 a.m. According to Ronald, there was blood inside the van and on appellant's clothing, which his wife explained was the result of a cyst on her ovary that had ruptured.

The appellant subsequently agreed to answer questions at the St. Francis County Sheriff's Department. After being verbally advised of her *Miranda* rights and signing a waiver-of-rights form, she gave a statement to the officers. The statement related that, during the early morning hours of February 16, appellant began bleeding and awakened her sixteen-year-old-daughter, Ashley Kirksey. The two left their home in the family's gray Plymouth Voyager van and drove to the parking lot of Baptist Memorial Hospital in Forrest City. Appellant "got scared," and, against her daughter's wishes, refused to go into the emergency room of the hospital. At approximately 4:10 a.m., while in the van, appellant delivered a baby boy, which was born with the umbilical cord wrapped around his neck. Ashley could not get the baby to move. Appellant cut the cord with a pair of scissors and tied it off with some old yellow crochet yarn. Rather than take the baby to the emergency room door, appellant, who was afraid she would be seen or that "someone would grab me and I wouldn't know what do to," instructed her daughter to start driving. According to appellant, Ashley drove to a dumpster west of Colt, and appellant placed the baby and some bloody sheets in the dumpster. Appellant maintained that she did not know that she was pregnant until she gave birth to the baby in the parking lot. She explained that she did not ask her husband to go with her to the hospital because they did not get along. According to appellant, her husband was "more interested in CB's" and constantly accused her of being unfaithful.

Following appellant's statement, she was charged with first-degree murder. After a complete autopsy revealed that the child had been stillborn, appellant was charged with abuse of a corpse, codified at Ark. Code Ann. § 5-60-101 (Repl. 1993). The trial court denied appellant's pretrial motion to dismiss the charges against her on the basis that the abuse of corpse statute was void for vagueness.

At trial, the State offered the testimony of James Meredith, the county coroner, who observed the "full term" baby at the scene. While he saw no evidence of trauma, it was Dr. Meredith's opinion that the baby died of exposure and neglect, and that had the baby received any medical attention whatsoever, it would have lived.

. Ashley Kirksey testified that, at 2:00 a.m. on February 16, her mother woke her up and got into bed with her. At 4:00 a.m., her mother awakened her a second time and told her that she had to go with her. Her mother got three sheets out of the linen closet and a pair of scissors from the kitchen, and told Ronnie that she and Ashley were going to the hospital. When they got into the van, her mother told her that she was in labor. When Ashley told her that they had to go to the hospital, her mother refused, stating that she was not going to keep the baby because she and Ronnie were having problems, and because she "couldn't handle another kid." When they arrived at the parking lot of the hospital, her mother stated that she would give the baby to the nurses after it was born. Ashley got in the back of the van with her mother "and then the baby came out and I caught it." The umbilical cord was wrapped around the baby's neck. When Ashley pushed on its arm, the baby would not move or cry. Ashley asked if she could take it inside the hospital, but her mother would not allow her to do so. Ashley tied and cut off the umbilical cord. After waiting for approximately 40 to 45 minutes for the afterbirth, they drove toward Colt. At her mother's direction, Ashley opened the sliding door to a dumpster and put the baby, sheets, and afterbirth inside.

At the close of the State's case-in-chief, Dougan renewed her motion to dismiss on the basis that § 5-60-101 was void for vagueness. She also moved for directed verdict on the basis that there was insufficient evidence that she had "physically mistreated" the corpse under the statute. The trial court denied both motions. Dougan presented no evidence on her behalf. The jury returned a verdict finding Dougan guilty as charged. After hearing evidence during the sentencing phase, the jury recommended that Dougan be sentenced to six years' imprisonment and assessed a $10,000 fine. The trial court entered judgment against Dougan accordingly, and she appeals.

## *I. Constitutionality of Ark. Code Ann. § 5-60-101*

■ Dougan maintains that the trial court erred in denying her motion to dismiss on the grounds that the abuse of corpse statute, Ark. Code Ann. § 5-60-101 (Repl. 1993), is unconstitutionally vague. The statute provides in pertinent part as follows:

(a) A person commits abuse of a corpse if, except as authorized by law, he knowingly:

(1) Disinters, removes, dissects, or mutilates a corpse; or

(2) Physically mistreats a corpse in a manner offensive to a person of reasonable sensibilities.

Dougan was charged under subsection (a)(2) of this statute. At a pretrial hearing, Dougan moved to dismiss the charge "based on the absence of judicial decisions within the statute itself." Particularly, Dougan argued that the statute provides no definitions for the terms "physically mistreats," "in a manner offensive," and "reasonable sensibilities," and thus, the statute "fails to reasonably prescribe the conduct that is prohibited." At the conclusion of the hearing, the trial court summarily denied Dougan's motion to dismiss.

■ We set forth the procedures for determining whether a statute is unconstitutionally vague in *State* v. *Torres*, 309 Ark. 422, 831 S.W.2d 903 (1992):

Our review of challenges to the constitutionality of statutes begins with the principle that statutes are presumed to be constitutional. The burden of proving a statute is unconstitutional is upon the party challenging it. If it is possible to construe a statute as constitutional, we must do so.

The norm by which we determine when a statute is void-for-vagueness is whether it lacks ascertainable standards of guilt such that persons of average intelligence must necessarily guess at its meaning and differ as to its application. The law must give fair warning in definite language of the prohibited act. In addition to fair warning, a statute is also void-for-vagueness if it is so broad that it becomes susceptible to discriminatory enforcement. Nev-

ertheless, flexibility, rather than meticulous specificity or great exactitude, in a statute is permissible as long as its reach is clearly delineated in words of common understanding. Moreover, impossible standards of specificity are not constitutionally required, even in criminal statutes. A statute will meet constitutional muster if the language conveys sufficient warning when measured by common understanding and practice. Additionally, it is not necessary that all kinds of conduct falling within the reach of the statute be particularized and the statute will not be struck down as vague only because marginal cases could be put where doubts might arise.

309 Ark. at 424-425. (Citations omitted and emphasis added.) *See also Manatt* v. *State,* 311 Ark. 17, 842 S.W.2d 845, cert. denied 113 S.Ct. 1647 (1992); *Leavy* v. *State,* 314 Ark. 231, 862 S.W.2d 832 (1993); *Thornton* v. *State,* 317 Ark. 626, 883 S.W.2d 453 (1994).

■■■■ We have not had occasion to interpret Ark. Code Ann. § 5-60-101. However, we have recognized that the common law in force at the time the statute was passed is to be taken into account in construing undefined words of the statute. *Meadows* v. *State,* 291 Ark. 105, 722 S.W.2d 584 (1987); *citing State* v. *Pierson,* 44 Ark. 265 (1884). In ascertaining the common law, we look not only to our own cases, but to early English cases, early writers on the common law, and cases from other states. *Meadows* v. *State, supra; citing* Ark. Stat. Ann. § 1-101 (Repl. 1976); *Baker* v. *State,* 215 Ark. 851, 223 S.W.2d 809 (1949). In *Baker,* the appellant kept the body of an elderly man for approximately five days after his death for the purpose of receiving and cashing his welfare check, and was prosecuted for "treating a dead body indecently" under the common law. During these five days, "[d]ecomposition of and other ghastly conditions of the body had occurred." *Id.* at 853. In rejecting Baker's argument that she had committed no offense, we relied in part on the following authorities:

In 17 C.J. 1148, in discussing offenses against dead bodies, this appears: "At common law it was an offense to treat the dead human body indecently, and various specific offenses were recognized. Ordinarily it is a misdemeanor

for one upon whom the duty is imposed of having a dead body buried to refuse or neglect to perform such duty.

Wharton's Criminal Law, 12th Ed., Vol. II, § 1704, says: *"Indecency in treatment of a dead human body is an offense at common law, as an insult to public decency. Hence it is indictable to expose such a body without proper burial; . . ."*

*Id.* at 854. (Emphasis added.) Although Baker was relieved from the common law burden of providing burial for the decedent, we held that the jury was justified in finding her guilty of the common law offense of "treating a dead body indecently."

Model Penal Code § 250.10 defines the offense of "abuse of corpse" as follows: "Except as authorized by law, a person who treats a corpse in a way that he knows would outrage ordinary family sensibilities commits a misdemeanor." In Comment 2, the drafters of the Model Penal Code state as follows:

[This offense] covers one "who treats a corpse in a way that he knows would outrage ordinary family sensibilities." This phrasing includes sexual indecency but is not so limited. It also reaches physical abuse, mutilation, *gross neglect, or any other sort of outrageous treatment of a corpse. The overreaching purpose is to protect against outrage to the feelings of friends and family of the deceased . . .*

*The distinguishing features of the Model Code offense are the generality and comprehensiveness with which the proscribed conduct is defined. Section 250.10 covers any conduct that would "outrage ordinary family sensibilities." This formulation is sufficiently broad to preclude gaps in coverage and yet sufficiently precise in its statement of the ultimate question to provide a meaningful standard of decision. Any possible problems of indeterminacy and lack of notice to the actor are resolved by the requirement of knowledge with respect to the outrageous character of his conduct.* Thus, the person who is not aware that his acts would offend family sensibilities does not commit an offense under this section, even though precisely that reaction obtains. Of course, the actor's idiosyncratic view of what

is outrageous does not matter. The standard is objective; it does not vary either to exculpate on the basis of the actor's unusual callousness or to condemn for outraging an excessively delicate relative of the deceased.

Model Penal Code § 250.10, Comment 2 (1980). The drafters depict the Arkansas statute as "a generic approach to defining the proscribed conduct but limit[ing] the offense to physical mistreatment that would be offensive or outrageous to ordinary sensibilities." *Id.*

At least two states have upheld similar statutes against void-for-vagueness challenges. Ohio Revised Code Annotated (Anderson) § 2927.01(B) provides that "no person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities." A violation of this provision constitutes "gross abuse of a corpse" and is a felony offense. In *State* v. *Glover*, 479 N.E.2d 901 (Ohio App. 1984), the Ohio Court of Appeals reversed a trial court's pretrial dismissal of an indictment against Glover for gross abuse of a corpse on the basis that the statute was unconstitutionally vague. In *Glover*, the Ohio Court of Appeals determined that "[t]he words, 'treat,' 'human corpse,' 'way,' 'outrages,' and 'sensibilities,' are commonly understood by persons of common intelligence." 479 N.E.2d at 904, *citing* Webster's New International Dictionary (2 Ed. 1954) 2699, 597, 2890, 1734, and 2279. In recognizing that, in the area of obscenity, courts have consistently approved legislation that required a factfinder to apply contemporary community standards, the *Glover* court concluded that the Ohio statute was not unconstitutionally vague. *Id.; see also State* v. *Gardner*, 582 N.E.2d 1014 (Ohio App. 6 Dist. 1989).

Pennsylvania's abuse of corpse statute, like Ohio's statute, closely follows the Model Penal Code approach. *See* 18 Penn. Stat. Ann. § 5510. In *Commonwealth* v. *Smith*, 567 A.2d 1070 (Pa. Super. 1989), *alloc. den.* 585 A.2d 468 (Pa. 1991), the Pennsylvania Superior Court considered the issue of "whether a person who knowingly leaves a corpse to rot, without making proper arrangements for a proper burial has 'treat[ed] a corpse in a way that [s]he knows would outrage ordinary family sensibilities.' " 567 A.2d at 1073. Smith, a habitual user of cocaine, had a history of neglecting her three-year-old daughter, who died of mal-

nutrition. The decomposed and mummified body of the girl was found in a kneeling position at the foot of her bed with her head laying over her folded hands on the bed. The door of the room had been locked from the outside by means of a rope that was tied to the outside of the door and attached to another doorknob. Smith said she concealed her daughter's corpse because she was "afraid and confused." *Id.* The Pennsylvania Court of Appeals, noting that "the purpose of drafting the statute in a very broad and general language was to insure that offenses such as concealing a corpse came within the purview of the statute," affirmed Smith's conviction for abuse of corpse. *Id.* In so holding, the *Smith* court reasoned that by concealing the corpse, Smith allowed it to be eaten by rodents and become mummified, and that her conduct constituted an outrage to ordinary family sensibilities. *Id. See also* John S. Herbrand, Annotation, *Validity, Construction, and Application of Statutes Making it a Criminal Offense to Mistreat or Wrongfully Dispose of Dead Body*, 81 A.L.R.3d 1071 (Supp. 1995).

■    In sum, we cannot conclude that our statute is unconstitutionally vague, as it conveys fair and sufficient warning when measured by common understanding. Particularly, the words "physically" and "mistreats" are commonly understood. The word "physical" is defined as "of or relating to the body," and the term "mistreat" as "to treat badly: abuse." *See Webster's Ninth New Collegiate Dictionary* 760, 887 (1988). As recognized by the drafters of the Model Penal Code offense, any possible problems of indeterminacy and lack of notice to Dougan and others similarly charged are resolved by the requirement of knowledge with respect to the outrageous character of her conduct. Moreover, our position is supported by decisions upholding the Model Penal Code offense, which is written more broadly than § 5-60-101. For these reasons, we reject Dougan's argument that the statute is unconstitutionally vague.

## II. Sufficiency of the evidence

For her second assignment of error, Dougan asserts that the State's evidence was insufficient to establish that she "physically mistreat[ed]" the corpse of her stillborn child within the purview of Ark. Code Ann. § 5-60-101(a)(2) (Repl. 1993). At the close of the State's case in chief, Dougan moved for a directed verdict

on the basis that the State failed to produce evidence of any physical harm to the child. She further argued that she was not charged with improper disposal of a body or improper burial. The State responded that the placing of a corpse in the dumpster constituted physical mistreatment of that corpse. The trial court denied the motion.

■ Prior to the enactment of the Arkansas Criminal Code in 1975, the Commentary to Ark. Stat. Ann. § 49-2921 (Repl. 1977), provided as follows:

> This section is designed to cover not only sexual assaults on dead human bodies *but also lesser forms of mishandling, abuse, or even neglect.* Its former statutory counterpart was found in old Ark. Stat. Ann § 41-3701 (removal of body from grave), 41-3702 (purchasing body), 41-3703 (Repl. 1964) (opening grave). The primary purpose of the section is to protect the feelings of family of the deceased person.

(Emphasis added.) In light of this Commentary, we believe that the legislature intended that § 5-60-101 cover Dougan's placement of her baby's corpse in a dumpster, as such an act constitutes a form of mishandling, abuse, or neglect. In light of the evidence presented, we cannot agree that there was insufficient proof from which the jury could have concluded that Dougan's conduct amounted to physical mistreatment of a corpse in a manner offensive to a person of reasonable sensibilities.

Affirmed.