Ms. Didi Sallings, Executive Director Arkansas Public Defender Commission 101 East Capitol, Suite 201 Little Rock, Arkansas 72201
Dear Ms. Sallings:
This official Attorney General opinion is rendered in response to your recent question regarding the refusal of appointment to capital murder cases by the Capital, Conflicts, and Appellate Office. You indicate that the Office's current caseload (as well as two key staff vacancies) have created a situation in which the Office should not accept any further cases for the time being. Nevertheless, several judges have questioned your right to refuse cases.
Accordingly, you have asked:
 Does the Capital, Conflicts, and Appellate Office have the authority to refuse appointment in capital murder cases?
It is my opinion that the Capital, Conflicts, and Appellate Office has the authority to suggest that the court not appoint the Office, on the grounds that a conflict, a caseload consideration, or some other circumstance renders the Office unable or unsuitable to serve. The ultimate determination of whether those grounds are acceptable, and whether the Office should serve, however, must be made by the court.
The Capital, Conflicts, and Appellate Office was created by Acts 1993, No. 1193, § [A.C.A. § 16-87-205]. That statute sets forth the situations in which the Office is to be appointed. (See also Acts 1997, No. 925; InRe: Adoption of Rule 37.5 of the Rules of Criminal Procedure,
___ Ark. ___ (Opin. Delivered, 6-23-97); Rule 37.5, Ark. R. Crim. P.) Sections (D) and (E) of A.C.A. § 16-87-205 also designate certain situations in which the Office is not to serve. They state:
 (D) Should the Capital, Conflicts, and Appellate Office also have a conflict, or for any other reason cannot or should not serve, the indigent person shall be represented by trial public defenders from another area, or, as a last resort, by private attorneys whose names appear on the list of attorneys maintained by the commission, or by both a trial public defender from another area and a private attorney whose name appears on the list maintained by the commission.
 (E) Subject to caseload restrictions and subject to conflict of interest considerations, the circuit courts shall give preference to the appointment of the Capital, Conflicts, and Appellate Office in the appointment of counsel in capital cases if the trial public defender cannot represent the indigent person and shall appoint private attorneys only as a last resort[.]
A.C.A. § 16-87-205(D) (E).
These provisions do not squarely address the question you have raised. However, the Arkansas Supreme Court's holding in Ball v. Roberts,291 Ark. 84, 722 S.W.2d 829 (1987) provides helpful guidance in analyzing this issue. In that case, the court held that a statute was unconstitutional because it established certain standards by which a lawyer could disqualify himself from being appointed to represent an indigent defendant. Such a statute, the court held, violated the principle of separation of powers, because it constituted an attempt by the legislature to dictate what should be a judicial decision. The court stated:
 The right to decide whether an attorney, who regularly practices before a court, can be appointed to represent an indigent in a criminal case is a judicial question, not a legislative one. Ark. Const. art. 4, 1
and 2; Ark. Const. amend. 28; see also Ark. Stat. Ann. 43-1203 (Repl. 1977); A.R.Cr.P. Rule 8.2. The legislature invaded the province of the judicial branch of government in declaring certain attorneys could not be appointed as counsel in a criminal case.
Ball v. Roberts, 291 Ark. at 86-7.
If the provisions of A.C.A. § 16-87-205 regarding the Capital, Conflicts, and Appellate Office were construed as allowing any entity other than the court to make the final determination regarding appointment of defense counsel, the statute would be unconstitutional under the holding of Ball v. Roberts. Statutory provisions are presumed to be constitutional and must be construed constitutionally if such a construction is possible. Dougan v. State, 322 Ark. 384, 912 S.W.2d 400
(1995). I must therefore construe A.C.A. § 16-87-205 as allowing the court to make the final determination, having considered the information presented by the Capital, Conflicts, and Appellate Office regarding its ability to accept the case in question.[1]
In this regard, I find it pertinent to note that the executive director of the Capital, Conflicts, and Appellate Office is in the best position to know of circumstances that would indicate that the Office should not accept particular cases. For this reason, and in light of the underlying purpose of the public defender system, including the Capital, Conflicts, and Appellate Office (i.e., to assure conformity with the constitutional guarantee and right to effective assistance of counsel for indigent persons through the use of public funds, see Acts 1975, No. 996, § 12, Emergency Clause, and Acts 1991, No. 1193), the courts should give serious weight and consideration to information that is provided to them in good faith by the Capital, Conflicts, and Appellate Office. See alsoBall v. Roberts, 291 Ark. 84, 722 S.W.2d 829 (1987) (Dudley, J., concurring) (Purtle, J., dissenting) (both noting the importance of the constitutional guarantee that is at stake in an appointment decision).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] I also find it notable that as a practical matter, the final determination will be judicial in any event. If the Office refused appointment and the judge ordered the Office to take the case anyway, the Office could choose between appealing the order, or challenging a contempt order. The outcome of either of these two choices will ultimately be determined judicially.