2010 Ark. App. 465

**Matthew HAMMONDS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–855.**

Court of Appeals of Arkansas.

June 2, 2010.

Kellie M. Emerson, Maumelle, for appellant.

Dustin McDaniel, Atty. Gen., Eileen W. Harrison, Asst. Atty. Gen., for appellee.

JOHN B. ROBBINS, Judge.

Appellant Matthew Hammonds was convicted by a jury of abuse of a corpse and was sentenced to six years in prison. Mr. Hammonds was found to have abused the corpse of his deceased wife, who died of a cocaine overdose in their home on May 13, 2008. On appeal, Mr. Hammonds raises two arguments. He challenges the trial court's decision to give jury instruction AMCI 2d 7113, arguing that the trial court instead should have given his proffered instruction because the model instruction is not a correct statement of the law. Mr. Hammonds also challenges the sufficiency of the evidence to support his conviction. We agree that there was insufficient evidence to support the verdict, and we reverse.

Pursuant to Ark.Code Ann. § 5-60-101(a)(2) (Repl.2005), a person commits abuse of a corpse if, except as authorized by law, he knowingly physically mistreats a corpse in a manner offensive to a person of reasonable sensibilities. Because of double-jeopardy concerns, we consider challenges to the sufficiency of the evidence before addressing other arguments. *Saul v. State*, 92 Ark. App. 49, 211 S.W.3d 1 (2005). When the sufficiency of the evidence is challenged, we consider only the evidence that supports the verdict, viewing the evidence in the light most favorable to the State. *LeFever v. State*, 91 Ark. App. 86, 208 S.W.3d 812 (2005). The test is whether there is substantial evidence to support the verdict, which is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another. *Id.* On review, this court neither weighs the evidence nor evaluates the credibility of witnesses. *Cluck v. State*, 91 Ark. App. 220, 209 S.W.3d 428 (2005).

The facts of this case are largely undisputed. Mr. Hammonds lived in a house with his wife, Lygia, her brother Arnett, and Lygia's two children, ages nine and fourteen. On May 13, 2008, Mr. Hammonds, Lygia, and Arnett smoked crack cocaine. Mr. Hammonds fell asleep at the house early that afternoon and Lygia wandered out of the house.

When Mr. Hammonds awoke, he drove around looking for Lygia. He found her in a disoriented state hugging a tree, and with the help of a passerby Mr. Hammonds was able to get Lygia into his vehicle and he drove her home. When Mr. Hammonds arrived home, Arnett helped him get Lygia into the house. The two

men were able to get her into a bedroom and laid her on the floor, covering her with a blanket.

At about 11:00 p.m. Mr. Hammonds discovered that his wife had died. He informed Arnett of that fact, and the men decided to wait until after Lygia's children went to school the next morning to handle the matter. The police received a call at about 7:45 a.m. on the following morning reporting that there had been a death at the house. When the police arrived Mr. Hammonds was arrested on outstanding warrants.

Mr. Hammonds subsequently gave two statements to the police. In his first statement, Mr. Hammonds said that he did not discover that his wife had died until the morning of May 14, 2008. However, in the next statement he acknowledged that he knew she was dead at 11:00 p.m. the night before. He indicated in his testimony that he wanted Lygia's children to be gone from the home before the police came to process the scene. Mr. Hammonds testified that he did not touch Lygia's body from the time he discovered she was dead until the police arrived.

In this appeal, we first address Mr. Hammonds's argument that there was not substantial evidence to support his conviction. Mr. Hammonds asserts that there was no evidence that he even touched her body after he discovered that Lygia was dead, and he notes that in its opening statement the prosecution conceded, "There's no allegation by the State that Mr. Hammonds mistreated her after she passed away." The theory of the prosecution rested on Mr. Hammonds's delay in reporting the death, but Mr. Hammonds submits that this conduct did not establish the required elements that he knowingly mistreated a corpse in a manner offensive to a person of reasonable sensibilities. Because the proof was insufficient, Mr. Ham-

monds argues that his conviction for abuse of a corpse must be reversed.

We agree that there was a lack of substantial evidence to support Mr. Hammonds's conviction. We have found only two published cases where the sufficiency of the evidence to support abuse of a corpse was an issue on appeal, and while both of those cases were affirmed, the facts were far more egregious than in the instant case. In *Dougan v. State*, 322 Ark. 384, 912 S.W.2d 400 (1995), the appellant wrapped her stillborn baby in bloody sheets and placed him in a dumpster. In *Dailey v. State*, 101 Ark. App. 394, 278 S.W.3d 120 (2008), the appellant placed the corpse in fifty-five gallon garbage bags, secured by duct tape, and hid it in a "junk room" where it began decomposing and was not discovered until four days later. In both of those cases the appellant mishandled and tried to hide the corpse, which rose to the level of physical mistreatment that would offend a person of reasonable sensibilities. By contrast, in the case at bar Mr. Hammonds did not touch the corpse at all, and instead of trying to conceal it he contacted the police the following morning to report the death.

The abuse-of-a-corpse statute was formerly designated as Ark. Stat. Ann. § 41–2920 (Repl.1977), and the commentary provided:

> This section is designed to cover not only sexual assaults but also lesser forms of mishandling, abuse, or even neglect.... The primary purpose of the section is to protect the feelings of the family of the deceased person.

The above commentary leaves open the possibility that neglect, as opposed to some affirmative act of physical mistreatment, may under the right circumstances satisfy the elements of the statute. However, the charged neglect in this case was waiting

eight hours and forty-five minutes until daybreak to contact the police. There was no evidence that appellant's delay in reporting the death had an adverse impact on any of the decedent's family members, including her children. On this record, we hold that substantial evidence did not support the jury's finding that Mr. Hammonds knowingly mistreated a corpse in a manner offensive to a person of reasonable sensibilities.

■ Mr. Hammonds's remaining argument is that the trial court erred by failing to properly instruct the jury when it gave AMCI 2d 7113, which provides in relevant part:

> Matthew Hammonds is charged with the offense of abuse of a corpse. To sustain this charge, the State must prove beyond a reasonable doubt that he knowingly mistreated a corpse in a manner offensive to a person of reasonable sensibilities.

Mr. Hammonds submits that this model instruction is not an accurate statement of the law because Ark.Code Ann. § 5–60–101(a)(2) provides that to be convicted a person must *physically* mistreat a corpse, and the word "physically" is omitted from the offending jury instruction. The trial court denied appellant's proffered instruction, which inserted the word "physically" before "mistreated." Mr. Hammonds's argument is well taken because criminal model jury instructions do not trump the language of our criminal statutes. *See State v. Sola*, 354 Ark. 76, 118 S.W.3d 95 (2003). Nevertheless, we need not decide whether reversible error occurred in failing to give the more accurate jury instruction in light of our holding that there was

not substantial evidence to support the conviction.

Reversed and dismissed.

VAUGHT, C.J., and HART, J., agree.

PITTMAN, J., concurs.

HENRY and BROWN, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, concurring.

I agree with Judge Henry's observation that the applicable standard of review requires that we consider only that evidence that supports the jury's verdict, and with her suggestion that this case should have been certified to the Arkansas Supreme Court as involving an issue of first impression. Nevertheless, if this case must be decided by this court, I think that it should be reversed and dismissed.

Our supreme court's initial interpretation of Ark.Code Ann. § 5–60–101 took into account common law in effect at the time of the statute's passage. *Dougan v. State*, 322 Ark. 384, 912 S.W.2d 400 (1995). The cases and other authorities cited therein strongly suggest that, although the offense may be committed by neglect as well as by direct abuse, to do so requires gross neglect to a degree that would constitute an outrageous offense to public decency and family sensibilities. Appellant may well be guilty of violating "the unwritten laws of God that know not change." [1] Nevertheless, viewing the evidence in the light most favorable to the State, I do not think reasonable jurors could find appellant guilty of neglect of such quality and character as to constitute a criminal offense under Ark.Code Ann. § 5–60–101 as interpreted in *Dougan v. State, supra.*

---

1. Sophocles, *Antigone*, E.H. Plumptre, *trans.* Vol. VIII THE HARVARD CLASSICS Part 6 (P.F.   Collier & Son, 1909–14).

COURTNEY HUDSON HENRY, Judge, dissenting.

Hammonds appeals his conviction of abuse of a corpse. The majority would reverse and dismiss the jury's verdict. However, I disagree. Sitting on the en banc panel, I would certify this case to the Arkansas Supreme Court as an appeal involving an issue of first impression, one needing further clarification in our case law, and more significantly, a substantial question of law concerning the interpretation of "[p]hysically mistreats a corpse in a manner offensive to a person of reasonable sensibilities," found in Arkansas Code Annotated section 5–60–101(a) (Repl.2005). *See* Ark. Sup.Ct. R. 1–2(b)(1), (5), (6) (2009). Alternatively, I would affirm the jury's verdict.

## I. *Certifiable issues*

### A. *Statutory interpretation of section 5–60–101*

The issue is whether Hammonds's neglect constitutes "[p]hysical mistreat[ment]" of a corpse. Pursuant to Arkansas Code Annotated section 5–60–101(a)(2), "[a] person commits abuse of a corpse if, except as authorized by law, he or she knowingly . . . [p]hysically mistreats a corpse in a manner offensive to a person of reasonable sensibilities." What constitutes physical mistreatment under section 5–60–101? In answering this question, we resort to the well-established rules of statutory construction.

The basic rule of statutory construction is to give effect to the intent of the legislature. *State v. Owens,* 370 Ark. 421, 260 S.W.3d 288 (2007). Where the language of the statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In attempting to construe legislative intent, we look to the language of the statute, the subject matter, the object to be accom-

plished, the purpose to be served, the remedy provided, legislative history, and other appropriate matters that throw light on the subject. *Reed v. State,* 330 Ark. 645, 957 S.W.2d 174 (1997). A statute's commentary, although not controlling over the statute's clear language, is a highly persuasive aid to construing that statute. *Doss v. Norris,* 2010 Ark. 199, 2010 WL 1726826. We adhere to the commentary unless it is contrary to the settled policy of the state. *Id.* We will not interpret a statute to yield an absurd result that defies common sense. *Owens, supra.*

In this case, the commentary serves to eliminate any possible ambiguity in the plain language of the statute. The commentary to Arkansas Statutes Annotated section 41–2920 (1947), which mirrors Arkansas Code Annotated section 5–60–101, provides:

> This section is designed to cover not only sexual assaults on dead human bodies but also lesser forms of mishandling, abuse, or even *neglect*. . . . The primary purpose of the section is to protect the feelings of the family of the deceased person. . . .

> Use of the phrase "except as authorized by law" excludes from the statute's ambit the various lawful acts that may be done to a dead human body. The exception incorporates by general reference statutes authorizing autopsies, embalming, and the use of bodies for medical and scientific purposes.

(Emphasis added.)

Given this commentary, I further examine our case law and find two landmark cases involving the abuse of a corpse. In *Dougan v. State,* 322 Ark. 384, 912 S.W.2d 400 (1995), Dougan wrapped the corpse of her baby in bloody sheets and hid the dead child in a dumpster. In its interpretation of the statute, the supreme court looked to

the commentary, noting that the legislature intended section 5–60–101 to cover acts that constituted forms of "mishandling, abuse, or *even neglect*." *Dougan*, 322 Ark. at 393, 912 S.W.2d at 405 (emphasis added). In viewing the statute based upon the commentary, the supreme court concluded that placing the baby's body in a dumpster constituted mistreatment, abuse, or neglect and held that sufficient evidence supported the conviction.

Similarly, in *Dailey v. State*, 101 Ark. App. 394, 278 S.W.3d 120 (2008), our court, noting that Dailey wrapped the corpse in garbage bags and hid the body in a junk room where it began decomposing, held that Dailey's mishandling or neglect of the corpse constituted a physical mistreatment that would offend a person of reasonable sensibilities. *Id.* at 396, 278 S.W.3d at 122. *See also McClanahan v. State*, 2010 Ark. 39, 358 S.W.3d 900 (affirming the court of appeals' reversal and dismissal of McClanahan's motion to dismiss because the offense of abuse of a corpse terminates when the defendant's actions terminate and submerging the body is not a continuing-course crime); *Baker v. State*, 215 Ark. 851, 223 S.W.2d 809 (1949) (affirming a jury verdict of the common-law offense of "treating a dead body indecently" when appellant kept the body of an elderly man for five days after his death for the purpose of receiving and cashing the deceased's welfare check). However, *Dougan* and *Dailey* are distinguishable from the case at bar because they do not involve the neglect of a corpse.

This appeal involves an interpretation of "neglect" when considering section 5–60–101. Arguably, Hammonds's actions do not constitute the type of mishandling or abuse evidenced in *Dougan*, which involved dumping a baby's body in a dumpster, or in *Dailey*, which involved wrapping a body in garbage bags and leaving it to decompose in a junk room. In *Dougan*, the supreme court suggested that "physically" and "mistreats" are commonly understood as "of or relating to the body" and "to treat badly: abuse," respectively. *Id.* at 392, 912 S.W.2d at 404. Thus, in interpreting this language in *Dougan* and applying it to the present case, Hammonds's actions may fall within the purview of the statute because they amount to neglect of his wife's corpse by his flagrant inaction. Hammonds willfully neglected his wife's corpse by allowing her dead, dirty body to lie on the bedroom floor for approximately eleven hours while foam sprayed from her mouth, a foul odor emanated in the room, and the presence of rigor mortis set in while her children remained in the home. Because Hammonds's conduct appears to constitute neglect, which previously has not been defined by either our legislature or our appellate courts, and in light of the supreme court's recent review of the statute in *McClanahan, supra*, I would have certified this case to the Arkansas Supreme Court as an appeal involving a substantial question of law concerning the abuse of a corpse, pursuant to Arkansas Code Annotated section 5–60–101(a).

### B. *Jury instruction*

On appeal, Hammonds argues that the model jury instruction does not accurately reflect section 5–60–101 because the word "physically" does not appear in the jury instruction. At the trial level, Hammonds proffered that "physically" should mean "physical injury" as defined in Arkansas Code Annotated section 5–1–102 (Repl. 2006).

The supreme court has stated that our criminal jury instructions do not trump the plain language of our criminal statutes. *Jones v. State*, 357 Ark. 545, 182 S.W.3d 485 (2004). Further, the supreme court

has consistently recognized that a trial court is required to give a model instruction unless it finds that the instruction does not accurately state the law. *See McCoy v. State,* 348 Ark. 239, 74 S.W.3d 599 (2002) (citing *In re Arkansas Model Criminal Instructions,* 264 Ark. App'x 967 (1979) (per curiam)). Based upon this precedent, the supreme court should have had the opportunity to decide whether AMI Crim.2d 7113, which omitted the word "physically," accurately reflects section 5–60–101. Ultimately, the supreme court's interpretation of the statute under the first point would impact this issue.

## II. *Affirm the jury's verdict*

Because the en banc panel refused to certify this case to the Arkansas Supreme Court, I am pressed to discuss the merits of Hammonds's appeal. Summarily, I would affirm the jury's verdict.

### A. *Factual and procedural history*

In viewing the evidence in the light most favorable to the State, I reiterate the pertinent facts. On the morning of May 13, 2008, Hammonds, an admitted cocaine user with drug charges stemming from 1999 to the present, and his wife, Lygia, smoked cocaine. After waking from a nap that afternoon, Hammonds discovered that his wife was not there, so Hammonds got in his car and proceeded to look for her. As he drove through a densely wooded area, he found her "hugged up to a tree, across a barbwire [sic] fence." Partially unclothed, clad only in her bra and underwear, and hanging onto the tree, Lygia appeared intoxicated and was muddy and "scratched up" from crawling through a ditch and a nearby fence. Hammonds pulled Lygia through the briers, dragged her through the fence, and, with the help of a bystander, put his wife into his car.

Hammonds claimed that he offered to call an ambulance but that Lygia refused.

Upon arriving at the house, Hammonds and Lygia's brother, Arnett Watson, proceeded to take Lygia to the bedroom but, because of her weight of 170 pounds, they could not get her onto the bed, so they left her on the floor. Hammonds attempted to clean her up, and Watson put a blanket over her body. When Hammonds's children saw their father bring their mother into the house, Hammonds's daughter, D.H., pleaded with her father to take her mother to the hospital. Hammonds refused and told D.H. that her mother had been "smokin' dope" and, if he called the police, the police would take her away. At 11:00 p.m., Hammonds checked on Lygia, discovered that she was not breathing and told Watson that she had died. According to Hammonds, they decided to call the police after the children went to school the next morning.

When officers arrived at the scene between 9:30 and 10:00 a.m., they found Lygia's body lying on the floor and clothed in underwear and a bra over her breasts. Lygia was "very, very cold" to the touch, and a spray of foam protruded from her mouth. Officer Shane West testified that a smell emanated from the room that he associated "with somebody that's been dead for a while." Stacey Rhoads, a criminal investigator with the Arkansas State Police, testified that the body, which was "very dirty," was covered with numerous scratches, cuts, and abrasions, and she had dirt and debris in her hair. Officer West took three statements from Hammonds, who kept changing the victim's time of death. According to Officer West, Hammonds admitted in his last statement that his wife died at approximately 11:00 p.m. the night before police were summoned to the scene. The medical examiner's report revealed that Lygia died of cocaine intoxi-

cation. Officer West arrested Hammonds on outstanding warrants and took Hammonds into custody. After being Mirandized and signing a waiver form, Hammonds gave his statements to police.

Following Hammonds's statements and an autopsy report, which revealed cocaine intoxication as Lygia's cause of death, the State charged Hammonds with abuse of a corpse, a violation of Arkansas Code Annotated section 5–60–101 (Repl.2005). On April 22, 2009, the circuit court conducted a jury trial and denied his motions for directed verdict. At trial, Hammonds requested that the circuit court give a non-model jury instruction containing the word "physically" to reflect the accurate wording of section 5–60–101. The court refused to grant Hammonds's proffered jury instruction, and the State submitted jury instruction AMI Crim.2d 7113, which does not include the word "physically" in the instruction. After deliberations, the jury found Hammonds guilty and sentenced him to six years' imprisonment at the Arkansas Department of Correction. Subsequently, Hammonds filed a motion for reconsideration of his motion for directed verdict or motion for new trial based upon an allegedly inaccurate wording of the jury instruction. The court later denied Hammonds's motion, and Hammonds timely filed a notice of appeal.

### B. Section 5–60–101

Our standard of review is clear. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Rounsaville v. State*, 372 Ark. 252, 273 S.W.3d 486 (2008); *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). We affirm a conviction if substantial evidence exists to support it. *Bell v. State*, 371 Ark. 375, 266 S.W.3d 696 (2007). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Moreover, we have a well-settled policy of affording deference to jury verdicts. *Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007). The credibility of the witnesses is an issue for the jury to decide and not this court. *See Baughman v. State*, 353 Ark. 1, 5, 110 S.W.3d 740, 743 (2003). The trier of fact is free to believe all or part of any witness's testimony and may resolve all questions of conflicting testimony and inconsistent evidence. *Id.* Unless the evidence does not meet the required standards, leaving the jury to speculate in reaching its verdict, the jury may choose to believe the State's account of facts rather than the defendant's. *Baughman, supra.*

Ignoring this standard of review, the majority opinion views the evidence in the light most favorable to Hammonds by reciting his own testimony favorable to his defense. Here, the jury did not believe Hammonds that he waited to call the police in an effort to spare his children's feelings, given that the children were present when he and Watson dragged the children's mother's body into the house and that Hammonds refused to seek medical help when his daughter pleaded with him to do so. The jury considered that Hammonds left his wife's body lying on the floor in soiled underwear for half a day to the point that her body was cold, rigor mortis was present, and her oral cavity contained dried froth. This jury obviously gave weight to the evidence demonstrating Hammonds's neglect in a manner that offended "a person of reasonable sensibilities." Ark.Code Ann. § 5–60–101(a). Further, as the legislative commentary suggests, Hammonds's actions do not fall under section 5–60–101's lawful exceptions, which include autopsies, embalming, or us-

ing the body for medical and scientific purposes. Therefore, in viewing the light most favorable to the State, we should give deference to this jury verdict and hold that substantial evidence supported Hammonds's conviction of abuse of a corpse.

### C. *Jury instruction*

I would affirm the circuit court's refusal to give Hammonds's proffered jury instruction. Nonmodel jury instructions are to be given only when the trial court finds that the model instructions do not accurately state the law or do not contain the necessary instruction on the subject at hand. *Jackson v. State*, 359 Ark. 297, 197 S.W.3d 468 (2004); *see also Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996) (holding no error in rejecting the appellant's proffered instruction, even though that statement was based on language from case law, when the AMCI instruction was a proper statement of the law). Any party that wishes to challenge the accuracy of the instruction, be it the State or the defendant, must rebut the presumption of correctness. *McCoy v. State*, 348 Ark. 239, 74 S.W.3d 599 (2002) (supplemental opinion upon denial of rehearing). A court is not required to give an instruction just because it accurately states the law, particularly if the instruction is sufficiently covered by those given. *Love v. State*, 281 Ark. 379, 664 S.W.2d 457 (1984).

Here, the circuit court gave Arkansas Model Criminal Instruction 7113 and refused to give Hammonds's nonmodel jury instruction. The jury instruction's lack of the word "physically" does not necessarily mean that the instruction inaccurately reflects the statute. Based upon our case law and the foregoing analysis, the physical mistreatment of a corpse encompasses not only mishandling and abuse but also neglect. *See Dougan, supra.* Further, the AMCI instruction was already a cor-

rect statement of the law, and the addition of "physically" was unnecessary and misleading. *See Misskelley, supra.* The insertion of the word "physically" necessarily would thwart the legislative intent that the offense covers the benign neglect of a corpse. For these reasons, and in light of our well-established standard of review, I submit that the circuit court did not abuse its discretion in refusing to give a nonmodel jury instruction.

Because the majority opinion reverses this jury's verdict based upon insufficient evidence, it is not necessary for the court to address this issue, and the majority's analysis regarding the jury instruction remains *dicta.*

BROWN, J., joins.