**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

_____

### CR-2022-0571

_____

**Kenneth Alan Vandusen**

**v.**

**State of Alabama**

**Appeal from Randolph Circuit Court**
**(CC-21-84)**

McCOOL, Judge.

Kenneth Alan Vandusen appeals his convictions for abuse of a corpse, a violation of § 13A-11-13, Ala. Code 1975, and obstructing justice

by using a false identity, a violation of § 13A-8-194, Ala. Code 1975.[1] The trial court sentenced Vandusen, as a habitual felony offender, to concurrent sentences of 20 years' imprisonment and then split the sentences, ordering Vandusen to serve 5 years' imprisonment, to be followed by 5 years' probation.

Facts

Devin Posey testified that, on July 29, 2020, he received a telephone call from Vandusen and that Vandusen "was in a state of panic" (R. 95) and told him that he "need[ed] his help" (R. 96) because he had "killed [Stephanie Sikes]" (id.) after "she pulled [a] gun on [him]." (R. 97.) According to Posey, Vandusen specifically said that he needed help moving Sikes's body and said that, "if [Posey] wasn't able to help him, he would have to cut [Sikes] up and move her." (R. 97-98.) However, Posey refused to help and, instead, "told [his] mother everything" (R. 98), and his mother telephoned the police.

---

[1]Vandusen was also convicted of tampering with physical evidence, a violation of § 13A-10-129, Ala. Code 1975, but he has not challenged that conviction on appeal. Vandusen was acquitted of murder, a violation of § 13A-6-2, Ala. Code 1975.

Sgt. Corey Parks of the Randolph County Sheriff's Office was then dispatched to conduct a welfare check at Sikes's house, and, as he "was pulling up in the driveway, Vandusen was approaching [his] vehicle." (R. 137-38.) Sgt. Parks asked Vandusen to identify himself, and, according to Sgt. Parks, Vandusen twice "gave [him] the name of Devon Posey." (R. 138.) Police officer Roy Brown of the Wedowee Police Department, who also responded to the scene, confirmed that Vandusen had "stat[ed] that his name was Devon Posey." (R. 173.) At that point, Sgt. Parks telephoned Posey's mother "to get some more information" (R. 144), and, while he was on the telephone, Officer Brown conducted a pat-down search of Vandusen and "found a Colorado ID belonging to a Kenneth Vandusen" (R. 176); that identification card included Vandusen's photograph. Sgt. Parks then handcuffed Vandusen and placed him into his patrol car.

After securing Vandusen, Sgt. Parks and Officer Brown conducted a "protective sweep" of Sikes's house. (R. 146.) During that protective sweep, Sgt. Parks discovered a trial of blood that wound through the residence, onto the back porch – which was covered by "dog or animal feces everywhere" (R. 152) – down the porch steps, and through the

3

backyard. That blood trail ultimately led to Sikes's body, which was found near the back of her property beside "a chain-link fence at the wood line" (R. 183), and her body, which had sustained multiple gunshot wounds, "was in a wheelbarrow or … gardening wagon, and there was a blanket over the wagon or wheelbarrow." (R. 184.) In addition to being covered by a blanket, Sikes's body could not be seen from her house because it was concealed by bushes (id.), a gate and "tall grass" (R. 189), and a table. (R. 190.)

## Discussion

Vandusen raises two claims on appeal that, he says, entitle him to relief. We address each claim in turn.

## I.

Vandusen argues that the State's evidence was not sufficient to sustain his convictions for abuse of a corpse and obstructing justice by using a false identity. In reviewing this claim, this Court "'"must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."'" Wilson v. State, 142 So. 3d 732, 809 (Ala. Crim. App. 2010) (quoting Ballenger v. State, 720 So. 2d 1033, 1034 (Ala.

4

Crim. App. 1998), quoting in turn <u>Faircloth v. State</u>, 471 So.2d 485, 488 (Ala. Crim. App. 1984)). If, "'"viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found [Vandusen] guilty beyond a reasonable doubt,"'" then the evidence was sufficient to sustain Vandusen's convictions. <u>Wilson</u>, 142 So. 3d at 809 (quoting <u>Nunn v. State</u>, 697 So. 2d 497, 498 (Ala. Crim. App. 1997), quoting in turn <u>O'Neal v. State</u>, 602 So. 2d 462, 464 (Ala. Crim. App. 1992)).

## A. Abuse of a Corpse

Section 13A-11-13(a) provides, in relevant part, that "[a] person commits the crime of abuse of a corpse if, except as otherwise authorized by law, he knowingly treats a human corpse in a way that would outrage ordinary family sensibilities." According to Vandusen, the State failed to prove that he violated § 13A-11-13 because, he says, the State "failed to provide any evidence that [he treated Sikes's] corpse … in any manner that would outrage ordinary family sensibilities." (Vandusen's brief, p. 15.) In support of that argument, Vandusen contends that there was no evidence indicating that Sikes's corpse "had been disfigured or altered"

or any other evidence "regarding the specific condition or treatment of the body." (Id. at 14, 15.)

Except for one exception not relevant here,[2] the Alabama Criminal Code does not provide any guidance as to what treatment of a corpse will generally "outrage ordinary family sensibilities." § 13A-11-13(a). There are also no Alabama cases that expressly address that issue, and the few cases that mention § 13A-11-13 in other contexts involved treatment of a corpse that obviously violates the statute. See, e.g., Lewis v. State, 889 So. 2d 623 (Ala. Crim. App. 2003) (sexual intercourse with a corpse); and State v. Stephens, 203 So. 3d 134 (Ala. Crim. App. 2016) (burying a corpse in an unmarked grave and later digging up the corpse, dismembering it, and setting it on fire). However, cases from other jurisdictions, which have similar abuse-of-a-corpse statutes, provide some guidance in this appeal.

In Dougan v. State, 322 Ark. 384, 912 S.W.2d 400 (1995), the Arkansas Supreme Court considered whether there was sufficient

---

[2]Section 13A-11-13(a) provides that abuse of a corpse "may include knowingly and willfully signing a certificate as having embalmed, cremated, or prepared a human body for disposition when, in fact, the services were not performed as indicated."

6

evidence to sustain the defendant's conviction for abuse of a corpse under § 5-60-101(a)(2), Ark. Code Ann., which, at that time, prohibited a person from "knowingly … [p]hysically mistreat[ing] a corpse in a manner offensive to a person of reasonable sensibilities." In that case, the evidence indicated that the defendant gave birth to a stillborn baby in a van and then instructed her 16-year-old daughter to drive the van to a dumpster, where the defendant instructed her daughter to leave the baby's body wrapped in a sheet. In considering whether § 5-60-101(a)(2) encompassed such conduct, the Court first looked at § 250.10 of the Model Penal Code, which provides that a person commits abuse of a corpse if he "treats a corpse in a way that he knows would outrage ordinary family sensibilities." Citing the commentary to the Model Penal Code, the Court noted that such language was "'sufficiently broad'" enough to include "'physical abuse, mutilation, gross neglect, or any other sort of outrageous conduct.'" Dougan, 912 S.W.2d at 403 (quoting Model Penal Code § 250.10, Comment 2 (1980)) (some emphasis omitted). The Court also noted that the Arkansas Legislature had provided similar commentary, explaining that § 5-60-101 had been drafted in language broad enough to encompass not only "assaults on dead bodies but also

7

lesser forms of mishandling, abuse, <u>or even neglect</u>." <u>Dougan</u>, 912 S.W.2d at 405 (some emphasis omitted). Thus, the Court held "that the legislature intended that § 5-60-101 cover [the defendant's] placement of her baby's corpse in a dumpster, as such an act constituted a form of mishandling, abuse or neglect," and affirmed her conviction. <u>Dougan</u>, 912 S.W.2d at 405.

In <u>Dailey v. State</u>, 101 Ark. App. 394, 278 S.W.3d 120 (2008), the Arkansas Court of Appeals also held that there was sufficient evidence to sustain the defendant's conviction for abuse of a corpse. In that case, the evidence indicated that, after killing the victim in the defendant's home, the defendant "wrapped the corpse in garbage bags and hid it [under a tarp] in a 'junk room' where it began decomposing." <u>Dailey</u>, 278 S.W.3d at 122. The defendant argued on appeal that his conviction should be overturned because, he said, he had "t[aken] no action which was damaging to [the victim's] corpse." <u>Id.</u> at 121. The Court concluded, however, that the facts of that case were "similar to <u>Dougan</u> in that both charged parties attempted to hide dead bodies." <u>Id.</u> at 122. Thus, the Court affirmed the defendant's conviction, holding that "attempt[ing] to hide [a] dead bod[y] … involve[s] the mishandling or neglect of a corpse

constituting physical mistreatment that would offend a person of reasonable sensibilities." Id.

The Arkansas Supreme Court returned to this issue in Williams v. State, 468 S.W.3d 776 (Ark. 2015). In that case, the evidence indicated that the victim had been asphyxiated, and, although the defendant denied killing the victim, he admitted that he had "carried her outside of his house and buried her." Id. at 778. The defendant argued, however, that there was no evidence indicating that he had "mutilated" or "mistreated" the corpse – a fact that, he said, indicated that he had not committed the offense of abuse of a corpse. Id. at 778. The Court rejected that argument and affirmed the defendant's conviction for abuse of a corpse, explaining that the jury could have found that, by burying the corpse on his own property, the defendant had "conceal[ed] [the victim's] body" in a way that was "outside the normal practices of handling or disposing of a corpse." Id. at 782.

More recently, the Arkansas Supreme Court reached the same conclusion in Cone v. State, 654 S.W.3d 648 (2022). In that case, the evidence indicated that the defendant murdered the victim in the victim's residence and then "cover[ed] her with bedding" and left her in the

residence. Id. at 656. The Arkansas Supreme Court held that such evidence was sufficient to sustain the defendant's conviction for abuse of a corpse because, the Court reasoned, the defendant had "conceal[ed] the victim in her residence by covering her with bedding," and his "decision to leave [the victim] on the chaise lounge, decomposing, could reasonably be found by a jury to be a course of conduct that would be offensive to a person of reasonable sensibilities." Id.

At least two other courts outside Arkansas have also held that evidence indicating that the defendant had concealed a corpse was sufficient to sustain a conviction for abuse of a corpse.

In Commonwealth v. Hutchison, 164 A.3d 494 (Pa. Super. Ct. 2017), the Pennsylvania Superior Court considered whether there was sufficient evidence to sustain the defendant's conviction for abuse of a corpse under 18 Pa. C.S.A. § 5510, which prohibits a person from "treat[ing] a corpse in a way that [the defendant] knows would outrage ordinary family sensibilities." Before addressing the evidence, the Court noted that it had previously considered whether "'a person who knowingly leaves a corpse to rot, without making arrangements for a proper burial[,] has treated a corpse in a way that she knows would

10

outrage ordinary family sensibilities'" and had held that such treatment constituted abuse of a corpse. Hutchison, 164 A.3d at 498 (quoting Commonwealth v. Smith, 389 Pa. Super. 606, 611, 567 A.2d 1070, 1073 (1989)). This was so, the Court had previously reasoned, because § 5510 had been drafted "'in very broad and general language … to ensure that offenses such as concealing a corpse came under the purview of the statute.'" Hutchison, 164 A.3d at 498 (quoting Smith, 567 A.2d at 1073). Thus, the Court held that there was sufficient evidence to sustain the defendant's conviction in Hutchison because the evidence indicated that, after discovering that his roommate had died of a drug overdose in their apartment, the defendant had waited two days to notify the police and, by doing so, had "concealed [the roommate's] corpse from authorities so that she could not receive a proper burial." Id. at 498.

In State v. Whitaker, [No. 2019-1482, Aug. 18, 2022] ___ Ohio St. 3d ___, ___, ___ N.E.3d ___, ___ (Ohio 2022), the Ohio Supreme Court considered whether there was sufficient evidence to sustain the defendant's conviction for abuse of a corpse under § 2927.01(B), Ohio Rev. Code Ann., which prohibits a person from "treat[ing] a human corpse in a way that would outrage reasonable community sensibilities." In that

11

case, the evidence indicated that the defendant raped the victim in a vacant house, murdered her, and then left her corpse in a closet. The defendant argued that his conviction for abuse of a corpse should be overturned because, he said, there was "no evidence showing that he inflicted any injury on [the victim's] corpse." Whitaker, ___ Ohio St. 3d at ___, ___ N.E.3d at ___. The Court explained, however, that § 2927.01(B) "'proscribes a broad range of conduct'" that encompasses "an attempt to conceal a body" and thus affirmed the defendant's conviction based on the evidence indicating that he had left the victim's corpse in the vacant house. Id. (quoting State v. Condon, 152 Ohio App. 3d 629, 648, 789 N.E.2d 696, 711 (2003)). See also State v. Nobles, 106 Ohio App. 3d 246, 267, 665 N.E.2d 1137, 1150 (1995) (noting that "abuse of a corpse can apparently be found in any attempt to conceal a body").

We find the reasoning of these courts to be persuasive. A defendant who knowingly conceals a corpse, "without making arrangements for a proper burial[,] has treated a corpse in a way that [he or] she knows would outrage ordinary family sensibilities." Hutchison, 164 A.3d at 498 (citation omitted). Thus, by proscribing any treatment of a corpse that "would outrage ordinary family sensibilities," § 13A-11-13(a), the

12

Alabama Legislature used language broad enough to "ensure that offenses such as concealing a corpse c[o]me under the purview of the statute." Hutchison, 164 A.3d at 498 (citation omitted). We therefore hold that evidence indicating that a defendant knowingly concealed a corpse is evidence that will support a finding that the defendant violated § 13A-11-13.

Returning to the case at hand, the evidence indicated that Vandusen intended to conceal Sikes's corpse because he told Posey that, "if [Posey] wasn't able to help him, he would have to cut [Sikes] up and move her." The evidence also indicated that, after Posey refused to help him, Vandusen dragged Sikes's corpse out of her house, across the back porch, down the porch steps, and through the backyard to the rear of the property, where he left the corpse in a wheelbarrow, hidden from view by a blanket and other objects. That evidence was sufficient to prove that Vandusen knowingly concealed Sikes's corpse and was therefore sufficient to sustain his conviction for abuse of a corpse. Although Vandusen claims that there was no evidence indicating that he "disfigured or altered" Sikes's corpse, we agree with those courts that have concluded that such evidence was not required. Vandusen's

concealment of Sikes's corpse was sufficient, in and of itself, to support a conviction for abuse of a corpse.

We do note, however, that there was additional evidence to support Vandusen's abuse-of-a-corpse conviction. As we have already noted, the evidence indicated that Vandusen dragged Sikes's corpse across her back porch, and Sgt. Parks testified that animal feces were "everywhere" on the porch. Thus, a reasonable inference to draw from the evidence was that Vandusen dragged Sikes's corpse through the animal feces. See Wilson, 142 So. 3d at 809 (noting that, in reviewing the sufficiency of the evidence, this Court must "accord the State all legitimate inferences" from the evidence (citations omitted)). Certainly, a defendant's act of dragging a human corpse through animal feces is conduct that "would outrage ordinary family sensibilities." § 13A-11-13(a). For this reason as well, the evidence was sufficient to sustain Vandusen's conviction for abuse of a corpse.

We acknowledge Vandusen's argument that "[n]o family members of the deceased testified at trial to … any outrage regarding the … treatment of [Sikes's] body." (Vandusen's brief, p. 15.) However, § 13A-11-13(a) provides that a person violates the statute if his treatment of a

14

corpse "would outrage <u>ordinary</u> family sensibilities." (Emphasis added.) In other words, § 13A-11-13(a) sets forth an objective standard by which to judge the defendant's treatment of a corpse, which means that the State is not required to present evidence indicating that the deceased's family was in fact subjectively outraged by the defendant's conduct. <u>See</u> <u>Dougan</u>, 912 S.W.2d at 403-04 (noting that, in determining whether the defendant's treatment of a corpse is outrageous, "'[t]he standard is objective; it does not vary either to exculpate on the basis of the actor's unusual callousness or to condemn for outraging an excessively delicate relative of the deceased'" (quoting Model Penal Code, § 250.10, Comment 2)). Here, we have already concluded that the evidence supported a finding that Vandusen concealed Sikes's corpse, as well as a finding that he dragged the corpse through animal feces, and such treatment of a corpse, judged objectively, constituted abuse of a corpse, regardless of whether Sikes's family was in fact outraged by Vandusen's conduct.

### B. Obstructing Justice by Using a False Identity

Section 13A-8-194(a) provides that "[a] person commits the crime of obstructing justice using a false identity if he or she uses identification documents or identifying information of another person or a fictitious

person to avoid summons, arrest, prosecution, or to impede a criminal investigation."  In this case, the evidence indicated that Vandusen twice provided another person's name when Sgt. Parks arrived at Sikes's house and asked him to identify himself.  Vandusen argues, though, that providing another person's name to Sgt. Parks did not violate § 13A-8-194 because, he says, "no actual obstruction" of justice occurred, given that Officer Brown quickly ascertained his true name, at which point he "was promptly arrested, and law enforcement's investigation continued." (Vandusen's brief, p. 17.)

However, § 13A-8-194 "applies … to actions that are done <u>for the purpose of</u> avoiding summons, arrest, or prosecution or to impede a criminal investigation."  <u>Hyshaw v. State</u>, 893 So. 2d 1239, 1242 (Ala. Crim. App. 2003) (emphasis added).  In other words, the question is not whether the defendant <u>successfully</u> obstructed justice but, rather, whether the defendant <u>attempted</u> to obstruct justice.  Indeed, the plain language of § 13A-8-194 provides that a person violates the statute if he uses false information <u>to</u> obstruct justice, not that he violates the statute if he uses false information and <u>does</u> obstruct justice.  <u>See</u> <u>Hyshaw</u>, 893 So. 3d at 1245 (holding that the defendant violated § 13A-8-194 by giving

16

a false name to law enforcement officers in an attempt to avoid arrest, even though the officers later determined that the name was false).

In this case, Posey testified that Vandusen telephoned him and admitted to killing Sikes. Later that day, Sgt. Parks went to Sikes's house to conduct a welfare check, and Vandusen, who was already there, twice told Sgt. Parks that his name was Devin Posey. Given that evidence, the jury could have reasonably inferred that, when Vandusen saw Sgt. Parks arrive, he knew Posey had reported Sikes's death and that he used Posey's name in order to appear as though he was the person who had reported her death and to avoid being arrested for her murder. Thus, the evidence was sufficient to sustain Vandusen's conviction for obstructing justice by using a false identity.

## II.

Vandusen argues that the trial court imposed illegal split sentences for his abuse-of-a-corpse conviction and his obstructing-justice-by-using-a-false-identity conviction. The State concedes that the split portions of those sentences are illegal and that remand is necessary for the trial court to correct the sentences. We agree.

Abuse of a corpse and obstructing justice by using a false identity are Class C felonies. See § 13A-11-13(b) and § 13A-8-194(b). As noted, the trial court sentenced Vandusen to 20 years' imprisonment for his convictions for those offenses and then split the sentences, ordering him to serve 5 years' imprisonment, to be followed by 5 years' probation. However, the Split Sentence Act, codified at § 15-18-8, Ala. Code 1975, provides that, when a defendant is convicted of a Class A, Class B, or Class C felony and receives a sentence "of greater than 15 years but not more than 20 years," the trial court may order that the defendant "be confined in a prison, jail-type institution, or treatment institution for a period of three to five years for Class A or Class B felony convictions and for <u>a period of three years for Class C felony convictions</u>." § 15-18-8(a)(2) (emphasis added).

"Based on the plain meaning of subsection 15-18-8(a)(2), … [w]hen [the trial court] decided to split [Vandusen's] 20-year sentences for his [C]lass C felony convictions, the [trial] court had to impose 3-year split terms on those sentences." <u>Smith v. State</u>, 334 So. 3d 250, 257 (Ala. Crim. App. 2020). Thus, we must remand the case to the trial court for that court to limit the split portion of each of Vandusen's 20-year sentences to

18

3 years. See Bishop v. State, [Ms. CR-20-0976, Sept. 2, 2022] ___ So. 3d ___, ___ (Ala. Crim. App. 2022) (holding that the defendant had been illegally ordered to serve a split sentence of 5 years' imprisonment on a 20-year sentence for a Class C felony and remanding the case for the trial court to "limit the split portion of [his] sentence to three years"). We note, though, that Vandusen's base sentences of 20 years' imprisonment are legal (because he was sentenced as a habitual felony offender, see § 13A-5-9, Ala. Code 1975), and therefore may not be changed. Born v. State, 331 So. 3d 626, 638 (Ala. Crim. App. 2020). The trial court shall take all necessary steps to ensure that due return is made to this Court within 42 days of the date of this opinion, and the return to remand shall include a transcript of the sentencing hearing and the court's amended sentencing order.

## Conclusion

Vandusen has not demonstrated that he is entitled to relief from his abuse-of-a-corpse conviction or his obstructing-justice-by-using-a-false-identity conviction. Thus, we affirm those convictions. However, because the split portions of Vandusen's sentences exceed three years, we

remand the case for the trial court to impose split sentences that comply with § 15-18-8(a)(2).

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Windom, P.J., and Kellum, J., concur.  Cole and Minor, JJ., concur in the result.